IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF EASTERN PENNSYLVANIA

| | |
|---|---|
| CARMELLA MARTIN<br>216 Barker Avenue<br>Sharon Hill, Pennsylvania<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>SOUTHEASTERN PENNSYLVANIA<br>TRANSPORTATION AUTHORITY<br>1234 Market Street<br>Philadelphia, PA 19107<br><br>　　　　Defendant<br><br>and<br><br>TRANSPORT WORKERS UNION OF<br>PHILADELPHIA, LOCAL 234<br>500 N. 2nd Street<br>Philadelphia, PA 19123<br><br>　　　　Defendant | CIVIL ACTION NO:<br><br>**COMPLAINT WITH JURY DEMAND** |

**CIVIL ACTION COMPLAINT**

Plaintiff Carmella Martin (hereinafter "Plaintiff") by and through undersigned counsel hereby complains as follows against the Southeastern Pennsylvania Transportation Authority ("SEPTA") and the Transport Workers Union of Philadelphia – Local 234 ("Union" or "Local 234").

**INTRODUCTION**

1. This is an action brought pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, for SEPTA's breach of the collective bargaining agreement

1

governing Plaintiff's employment and for the Union's breach of its duty of fair representation owed to Plaintiff as a member of the bargaining unit, and against SEPTA for unlawfully terminating Plaintiff and failing to accommodate Plaintiff in retaliation for Plaintiff's exercise of rights under the Family and Medical Leave Act, 29 U.S.C. § 2617(a), against SEPTA for terminating Plaintiff because of her race in violation of Section 1981 of the Civil Rights Act of 1866 and against the Union for failing to provide her fair representation because of her race in violation of Section 1981 of the Civil Rights Act of 1866, and against SEPTA for unlawfully terminating Plaintiff and failing to accommodate Plaintiff in violation of the public policy of the Commonwealth of Pennsylvania because of Plaintiff's exercise of her rights under the Pennsylvania Workers' Compensation law. Plaintiff has also filed administrative claims against the Defendants with the Equal Employment Opportunity Commission and the Pennsylvania Human Relations Commission asserting Defendants have violated the Americans with Disabilities Act, the Pennsylvania Human Relations Act, and Title VII of the Civil Rights Act of 1964, but has not yet received a right-to-sue as to those claims. Plaintiff intends to join those claims to this action once she has exhausted her administrative remedies.

## JURISDICTION AND VENUE

2. The foregoing paragraphs are incorporated herein as if set forth in full.

3. This Court may properly maintain personal jurisdiction over Defendants because Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice.

4. This Court has original subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. Section 1331 because the claims herein arise under laws of the United States,

specifically Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, and the Family and Medical Leave Act, 29 U.S.C. § 2617(a)(2).

5. This Court has jurisdiction over Plaintiffs' state law claim because they are supplemental to Plaintiffs' underlying federal claims and arise out of the same transaction or occurrence, having the same common nucleus of operative facts pursuant to 28 U.S.C. § 1367(a).

6. Venue is properly laid in this judicial district pursuant to 28 U.S.C. Sections 1391(b)(1) and (b)(2), because Defendant resides in and/or conducts business in this judicial district and because a substantial part of the acts and/or omissions giving rise to the claims set forth here in occurred in this judicial district.

## PARTIES

7. The foregoing paragraphs are incorporated herein as if set forth in full.

8. Plaintiff Carmella Martin is an individual residing in Pennsylvania and was at all relevant times an employee of SEPTA and a member of the bargaining unit represented by Local 234.

9. Defendant SEPTA is a public transportation authority organized under the laws of the Commonwealth of Pennsylvania, with its principal place of business located in Philadelphia, Pennsylvania.

10. Defendant Local 234 is a labor organization within the meaning of the Labor Management Relations Act, representing employees of SEPTA pursuant to a collective bargaining agreement, with its principal place of business located in Philadelphia, Pennsylvania.

## FACTUAL BACKGROUND

11. Plaintiff was employed by SEPTA as a transit worker and was a member of the bargaining unit represented by Local 234.

12. Plaintiff is an African-American woman.

13. On April 8, 2023, while performing her duties, Plaintiff witnessed a homicide in the subway where she worked.

14. As a direct result of witnessing this traumatic event, Plaintiff developed Post-Traumatic Stress Disorder, anxiety, and depression, as documented by her treating physicians.

15. Following this incident, Plaintiff took approved leave under the Family and Medical Leave Act and workers' compensation.

16. SEPTA contested Plaintiff's workers' compensation claim.

17. On November 9, 2023, SEPTA dropped Plaintiff from the rolls and effectively terminated her employment for "expiration of sick leave," despite her approved leave status.

18. Plaintiff filed a grievance through Local 234 challenging this termination.

19. On December 27, 2023, a ruling was issued in Plaintiff's workers compensation case resolving her disputed workers' compensation claim in her favor and providing that Plaintiff would receive workers compensation benefits going forward ("Workers Compensation Ruling").

20. Under Section 503(V) of the collective bargaining agreement between SEPTA and Local 234 (the "CBA"), when a workers' compensation dispute is resolved in favor of an employee, that employee shall remain on Injured On Duty ("IOD") leave.

21. On March 8, 2024, SEPTA granted Plaintiff's grievance due to the existence of the Workers Compensation Ruling, and reinstated Plaintiff into on IOD status.

22. In or around April 2024, SEPTA required Plaintiff submit to a medical evaluation by a medical examiner.

23. On May 13, 2024, SEPTA informed Plaintiff that the medical examiner had determined Plaintiff was "fully recovered" and directed her to return to work with full duties on May 20, 2024.

24. This directive was issued despite continuing medical documentation from Plaintiff's treating physicians that she remained disabled and specifically could not work in the subway environment where she had witnessed the homicide.

25. For instance, on May 31, 2024, Plaintiff's physician Dr. Soutendijk completed a medical questionnaire stating: "Patient should not be assigned to a role in the subway... She could be assigned another role" and this was submitted to SEPTA.

26. Rather than engaging Plaintiff in an interactive dialogue regarding accommodation of her medical restrictions, SEPTA engaged in private internal discussions about her request and then denied it without notification or explanation.

27. Because SEPTA refused to transfer Plaintiff to another position and refused to place her on IOD leave as required by the CBA following the successful resolution of her workers' compensation claim, Plaintiff's sick leave allotment exhausted.

28. On December 17, 2024, SEPTA terminated Plaintiff's employment for exhaustion of sick leave.

29. SEPTA's requirement Plaintiff submit to a medical examiner in May 2024 and SEPTA's use of that examiner's opinion, including after Plaintiff made a new accommodation request and submitted new medical information, constituted a breach of the collective bargaining agreement.

30. SEPTA's exhaustion of Plaintiff's sick time and termination of her employment for exhaustion of sick time constituted a breach of the collective bargaining agreement.

31. Following her December 17, 2024 termination, Plaintiff filed a grievance through Local 234, arguing that the termination should be reversed because SEPTA had violated the collective bargaining agreement in terminating her.

32. On April 10, 2025, Local 234 and SEPTA held a Labor Relations Step hearing concerning Plaintiff's grievance.

33. Local 234 did not call Plaintiff as a witness at that hearing, despite the Agreement providing that Local 234 could call witnesses.

34. On or around April 21, 2025, SEPTA responded to the grievance by denying it.

35. On June 9, 2025, Plaintiff attending a meeting with several Union agents present in which their continued representation with her was discussed.

36. During that meeting, Plaintiff was asked several questions about the original incident, including why she had taken pictures and whether she had ever seen dead bodies before, and in which the Union questioned the seriousness of Plaintiff's disabilities and medical conditions.

37. The Union agents' questioning of Plaintiff was designed to and did intimidate, humiliate, and discourage Plaintiff from pursuing her legal rights and SEPTA's violation of her rights under the CBA.

38. The Union agents' questioning of Plaintiff demonstrated that they harbored discriminatory animus towards Plaintiff on the basis of her disability.

39. On June 17, 2025, by letter, the Union informed Plaintiff that it would not pursue her grievance further.

40. Based on her long-term employment with SEPTA and her knowledge of Local 234's prior representation of other employees, Plaintiff believes that Local 234 refused to pursue

her grievance further because of her race and because of her disability and request for reasonable accommodations.

41. Local 234's refusal to proceed with Plaintiff's grievance was arbitrary, discriminatory, grossly negligent, and in bad faith.

42. Plaintiff has also filed administrative claims against the Defendants with the Equal Employment Opportunity Commission and the Pennsylvania Human Relations Commission asserting Defendants have violated the Americans with Disabilities Act, the Pennsylvania Human Relations Act, and Title VII of the Civil Rights Act of 1964, but has not yet received a right-to-sue as to those claims. Plaintiff intends to join those claims to this action once she has exhausted her administrative remedies.

## COUNT I
### Breach of Collective Bargaining Agreement (*Hybrid* Section 301)
**(Against Defendant SEPTA)**

43. The foregoing facts are incorporated herein as if set forth in their entirety.

44. At all relevant times, SEPTA and Local 234 were parties to a collective bargaining agreement governing the terms and conditions of employment for bargaining unit members, including Plaintiff.

45. SEPTA breaches of the CBA include but are not limited to:

a. failing to place and keep Plaintiff on IOD leave after the successful resolution of her disputed workers' compensation claim on December 27, 2023.

b. Treating time in which Plaintiff should have been on IOD leave as counting against her sick time allotment;

c. Failing to transfer Plaintiff to a position she could perform;

  d. Acting in bad faith and in violation of the covenant of good faith and fair dealing by refusing to engage in an interactive process in connection with Plaintiff's requests for transfers or accommodations *inter alia* because of Plaintiff's disability, her use of workers' compensation benefits, and her use of FMLA benefits;

  e. Terminating Plaintiff;

  f. Denying her grievance;

46. As a direct and proximate result of SEPTA's breaches of the CBA, Plaintiff has suffered damages including lost wages, lost benefits, and other compensatory damages.

## COUNT II
## Breach of Duty of Fair Representation (*Hybrid* Section 301)
### (Against Defendant Local 234)

47. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

48. As the exclusive bargaining representative for SEPTA employees in the bargaining unit, Local 234 owed Plaintiff a duty of fair representation.

49. A union's duty of fair representation requires that the union serve the interests of all members without hostility or discrimination, exercise its discretion with complete good faith and honesty, and avoid arbitrary conduct.

50. Local 234 breached its duty of fair representation to Plaintiff in multiple respects.

51. Local 234 failed to investigate and pursue Plaintiff's grievance in good faith, as evidenced by its failure to call her as a witness at the April 10, 2025 Labor Relations Step hearing, despite Section 201(a) of the CBA permitting such testimony.

52. Local 234 failed to toll the time required for grievance and arbitration by notifying SEPTA of the outstanding workers' compensation dispute, in violation of its obligations under Section 201(I)(3) of the CBA.

53. Local 234 failed to meet with Plaintiff to discuss whether to continue with her grievance until June 9, 2025, after the ostensible thirty-working-day deadline to request arbitration had already elapsed, thereby allowing critical deadlines to pass.

54. Local 234 subjected Plaintiff to hostile, discriminatory, and bad-faith questioning during the June 9, 2025 meeting, doubting the legitimacy of her disability and attempting to discredit her claims.

55. Local 234's decision not to proceed with Plaintiff's grievance was arbitrary, perfunctory, and made in bad faith.

56. Local 234's refusal to pursue Plaintiff's meritorious grievance was motivated by discriminatory animus based on Plaintiff's disability, as the members who questioned her about her disability substituted their own beliefs and prejudices about mental illnesses and expressed statements hostile to Plaintiff's disability and individuals with mental health-related disabilities.

57. Local 234's refusal to pursue Plaintiff's meritorious grievance was motivated by discriminatory animus based on Plaintiff's race, as she is African-American and all Union representatives who questioned her at the June 9, 2025 meeting were Caucasian.

58. As a direct and proximate result of Local 234's breach of its duty of fair representation, Plaintiff has been unable to pursue her grievance through arbitration and has suffered damages including lost wages, lost benefits, emotional distress, and other compensatory damages.

59. Plaintiff's claims against SEPTA for breach of the CBA and against Local 234 for breach of the duty of fair representation are inextricably interdependent.

60. SEPTA's breaches of the CBA would not have resulted in Plaintiff's ultimate termination and loss of employment if Local 234 had adequately represented Plaintiff and pursued her grievance through arbitration.

61. Local 234's breach of its duty of fair representation prevented Plaintiff from vindicating her rights under the CBA through the grievance and arbitration process.

## COUNT III
## Retaliation in Violation of the Family and Medical Leave Act
### (Against Defendant SEPTA)

62. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

63. SEPTA is an employer within the meaning of the FMLA, 29 U.S.C. § 2611(4), and employs more than fifty employees.

64. Plaintiff is an eligible employee within the meaning of the FMLA, having been employed by SEPTA for more than twelve months and having worked more than 1,250 hours during the twelve months preceding her leave.

65. Prior to April 2023, SEPTA administrator Yvette Hill attempted to challenge Plaintiff's use of FMLA leave and Plaintiff successfully overcame that challenge.

66. Following the traumatic incident on April 8, 2023, in which Plaintiff witnessed a homicide at her workplace, Plaintiff exercised her rights under the FMLA by taking approved FMLA leave to address her serious health condition, including Post-Traumatic Stress Disorder, anxiety, and depression.

67. Plaintiff's exercise of her FMLA rights constituted protected activity under 29 U.S.C. § 2615(a)(1) and (2).

68. On November 9, 2023, while Plaintiff remained on approved FMLA leave, SEPTA terminated Plaintiff's employment for "expiration of sick leave."

69. SEPTA's termination of Plaintiff on November 9, 2023, while she was exercising her FMLA rights, constituted an adverse employment action taken in retaliation for her use of protected FMLA leave.

70. Following Plaintiff's reinstatement on December 27, 2023, SEPTA subjected Plaintiff to continuing retaliatory conduct, including requiring her to undergo an independent medical examination in April 2024, ordering her to return to full duty work on May 20, 2024 despite her continuing serious health condition, refusing to engage in any meaningful discussion regarding accommodation of her medical restrictions, and excluding her from the seniority-based bidding process that would have allowed her to obtain positions compatible with her medical limitations.

71. SEPTA's refusal to accommodate Plaintiff's medical restrictions and its insistence that she return to work in the subway environment where she witnessed the homicide, despite medical documentation that such assignment would exacerbate her PTSD, anxiety, and depression, was motivated by retaliatory animus toward Plaintiff for having exercised her FMLA rights.

72. The temporal proximity between Plaintiff's exercise of FMLA rights and SEPTA's adverse actions, combined with SEPTA's departure from established policies and procedures regarding IOD leave and workers' compensation resolutions, demonstrates a causal connection between Plaintiff's protected activity and the adverse employment actions taken against her.

73. On December 17, 2024, SEPTA terminated Plaintiff's employment for exhaustion of sick leave, which termination was the culmination of SEPTA's retaliatory course of conduct that began with the November 9, 2023 termination.

74. The same agent of Defendant, Yvette Hill, who had previously unsuccessfully challenged Plaintiff's use of FMLA leave was also a determinative decision-maker in Plaintiff's December 2024 termination, and Hill's decision to terminate Plaintiff was motivated in whole or in part because of Plaintiff's prior success in overcoming Hill's challenge to Plaintiff's use of FMLA.

75. SEPTA's actions were intentional, willful, and taken in retaliation for Plaintiff's exercise of her rights under the FMLA.

76. As a direct and proximate result of SEPTA's retaliatory conduct in violation of the FMLA, Plaintiff has suffered damages including lost wages, lost benefits, emotional distress, and other compensatory damages.

77. SEPTA's willful violation of the FMLA entitles Plaintiff to liquidated damages pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii).

## COUNT IV
### Wrongful Discharge In Violation Of Pennsylvania Public Policy
(Against SEPTA)

78. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

79. The Commonwealth of Pennsylvania has established a clear and specific public policy protecting employees who file workers' compensation claims from retaliatory discharge. *Shick v. Shirey*, 552 Pa. 590 (Pa. 1998).

80. Following the traumatic incident on April 8, 2023, Plaintiff filed a workers' compensation claim with the Pennsylvania Bureau of Workers' Compensation seeking benefits for her work-related injuries, including Post-Traumatic Stress Disorder, anxiety, and depression.

81. Plaintiff's workers' compensation claim was disputed by SEPTA.

82. On December 27, 2023, Plaintiff's disputed workers' compensation claim was resolved in her favor pursuant to a judicial stipulation, establishing her entitlement to workers' compensation benefits.

83. Plaintiff continued to receive workers' compensation benefits following the December 27, 2023 resolution of her claim and remained eligible for such benefits based on her work-related injuries.

84. SEPTA terminated Plaintiff's employment on December 17, 2024, purportedly for exhaustion of sick leave, despite the fact that Plaintiff should have been designated on IOD leave following the successful resolution of her workers' compensation claim.

85. SEPTA's termination of Plaintiff was motivated, at least in part, by retaliatory animus toward Plaintiff for having filed and successfully pursued her workers' compensation claim.

86. SEPTA's termination of Plaintiff violated the clear and specific public policy of the Commonwealth of Pennsylvania protecting employees from discharge in retaliation for filing workers' compensation claims.

87. SEPTA's wrongful discharge of Plaintiff caused Plaintiff to suffer damages including lost wages, lost benefits, emotional distress, and other compensatory damages.

88. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

## COUNT V
## Violations of Section 1981 of the Civil Rights Act of 1866
### (Race/Ethnicity Discrimination)
### (Against SEPTA)

89. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

90. SEPTA has accommodated and transferred Caucasians with disabilities in circumstances similar to Plaintiff's situation.

91. SEPTA has endeavored to preserve the employment of Caucasians over the employment of African-Americans, including in the acceptance of grievances, disputes regarding workers compensation, and the assignment of workers to various leave types.

## COUNT VI
## Violations of Section 1981 of the Civil Rights Act of 1866
### (Race/Ethnicity Discrimination)
### (Against Defendant Local 234)

92. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

93. SEPTA's actions constitute violations of Section 1981.

94. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

95. The Union failed to arbitrate Plaintiff's grievance because Plaintiff was not Caucasian.

96. The Union's actions constitute violations of Section 1981.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. SEPTA breached the collective bargaining agreement *inter alia* by terminating Plaintiff;

B.     Local 234 breached its duty of fair representation to Plaintiff by failing to submit her grievance to arbitration;

C.     Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to lost past earnings and future lost earnings;

D.     SEPTA is to reinstate Plaintiff to her employment;

E.     Defendants are to be prohibited from continuing to maintain their illegal policies, practices, or customs of discriminating against employees or prospective employees or union members based on their race, disabilities, record of disabilities, perceived disabilities and/or record of perceived disabilities, use of FMLA leave, and resort to the workers' compensation laws of the Commonwealth of Pennsylvania;

F.     Plaintiff is to be awarded punitive damages in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious, and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

G.     Plaintiff is to be awarded damages for emotional distress and/or pain and suffering (as permitted by applicable law) and is to be accorded any and all other equitable and legal relief as the Court deems just, proper, and appropriate; and

H.     Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable law; and

I.     Plaintiff's claims are to receive a trial by jury.

        Respectfully submitted,

        **SWARTZ SWIDLER, LLC**

        s/ *Joshua S. Boyette*
        Joshua S. Boyette, Esq.
        9 Tanner Street, Suite 101
        Haddonfield, NJ 08033
        Phone (856) 685-7420
        Fax (856) 685-7417

Dated: November 14, 2025