**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CARMELLA MARTIN** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 25-6468** |
| | : | |
| **SOUTHEASTERN PENNSYLANIA** | : | |
| **TRANSPORTATION AUTHORITY;** | : | |
| **TRANSPORT WORKERS UNION OF** | : | |
| **PHILADELPHIA, LOCAL 234** | : | |

## <u>MEMORANDUM</u>

**KEARNEY, J.**                                                                                    **March 11, 2026**

An African American SEPTA employee left work after witnessing a murder on the job. She suffered emotional distress including post-traumatic stress. SEPTA later fired her when she did not return to work after exhausting sick leave and after a medical examiner found she had fully recovered from the trauma. She asked her union to grieve her firing. The union interviewed her and decided not to further pursue her grievance. She now sues both her former employer SEPTA and her union alleging they discriminated against her on the basis of her race in resolving her grievance. She also alleges her union breached a duty of fair representation and SEPTA breached the collective bargaining agreement. Her union moves to dismiss arguing she has not alleged facts to support her racial discrimination claims or a breach of its duty of fair representation under Pennsylvania law. SEPTA argues its former employee cannot assert her breach of the collective bargaining agreement claim if she is unable to assert a fair representation claim against her union. We partially agree with the union and dismiss the former employee's racial discrimination claim against the union without prejudice. We otherwise deny SEPTA's and the union's motion. We expect to benefit from a complete factual context after discovery.

I.    **Alleged Facts**

African American Carmella Martin witnessed a murder on April 8, 2023 while working for Southeastern Pennsylvania Transit Authority (SEPTA).[1] She developed post-traumatic stress disorder, anxiety, and depression after this event.[2] She took approved leave from her job under the Family and Medical Leave Act and filed a workers' compensation claim.[3]

SEPTA contested Ms. Martin's workers' compensation claim.[4] SEPTA terminated Ms. Martin on November 9, 2023 after her sick leave expired.[5]

### *Ms. Martin seeks help from her union.*

Ms. Martin then sought help from her union, Transport Workers Union of Philadelphia, Local 234, the exclusive bargaining representative for SEPTA employees in her bargaining unit under a collective bargaining agreement.[6] Ms. Martin filed a grievance through Local 234 challenging SEPTA's decision to fire her after sick leave ended.[7]

But then a workers' compensation ruling in her favor arrived three weeks later.[8] The collective bargaining agreement between SEPTA and Local 234 requires SEPTA to place an employee on "Injured on Duty" leave when the employee receives a workers' compensation ruling in his or her favor.[9] SEPTA granted Ms. Martin's grievance on March 8, 2024 and reinstated her Injured on Duty status the same day.[10]

### *SEPTA requests medical updates and again fires Ms. Martin.*

SEPTA required Ms. Martin to undergo a medical evaluation by a medical examiner one month later.[11] SEPTA told Ms. Martin on May 20, 2024 the medical examiner determined she had fully recovered.[12] SEPTA directed Ms. Martin to return to full-duty work and removed her from Injured on Duty status the same day.[13] Ms. Martin's doctor completed a medical questionnaire on

May 31, 2024 stating Ms. Martin "should not be assigned to a role in the subway" and "[s]he could be assigned another role."[14] Ms. Martin submitted her doctor's evaluation to SEPTA.[15]

SEPTA denied Ms. Martin's reassignment request without notification or explanation.[16] Ms. Martin exhausted her sick leave allotment.[17] SEPTA again fired Ms. Martin on December 17, 2024 for not reporting to work after exhausting sick leave.[18]

### Ms. Martin challenges her union's representation in her SEPTA dispute.

Ms. Martin again grieved through Local 234.[19] She grieved SEPTA violated the collective bargaining agreement by firing her and wanted SEPTA to reverse its decision.[20]

Local 234 and SEPTA held a "Labor Relations Step" hearing on April 10, 2025 to hear Ms. Martin's post-termination grievance.[21] Ms. Martin and Local 234 had the right to call witnesses at the hearing under section 201(a) of the collective bargaining agreement.[22] Local 234 did not call Ms. Martin as a witness.[23]

SEPTA denied Ms. Martin's grievance on April 21, 2025.[24] Local 234 agents waited several weeks before meeting with Ms. Martin on June 9, 2025 to discuss Local 234's continued representation of Ms. Martin.[25] Local 234 did not toll the arbitration timeline under the collective bargaining agreement.[26] The June 9, 2025 meeting did not occur until after a thirty-working-day deadline to request arbitration already passed.[27]

Local 234 agents asked Ms. Martin several questions during the June 9, 2025 meeting about the April 2023 murder she witnessed as a SEPTA employee.[28] Ms. Martin viewed Local 234's questions as "hostile, discriminatory, and [in] bad-faith."[29] The agents asked why Ms. Martin "had taken pictures" and "whether she had ever seen dead bodies before."[30] The agents questioned the seriousness of Ms. Martin's disabilities and medical conditions.[31] Ms. Martin felt "intimidate[d], humiliate[d], and discourage[d] from pursuing" her rights under the collective bargaining

agreement.[32] Ms. Martin perceived the agents "harbored discriminatory animus toward [her] on the basis of her disability."[33] The agents made hostile statements about her disability and other individuals with mental health-related disabilities.[34]

Local 234 informed Ms. Martin it would not further pursue her grievance through a June 17, 2025 letter.[35]

### Ms. Martin sues SEPTA and her union.

Ms. Martin sued SEPTA and Local 234 for equitable relief and damages after learning her union would not further pursue her grievances and later amended her allegations.[36] She alleges SEPTA breached the collective bargaining agreement by: "failing to place and keep her on" Injured on Duty status after she received a favorable workers' compensation ruling; counting her time as sick leave instead of Injured on Duty leave; "failing to transfer [her] to a position she could perform"; terminating her; and denying her grievance.[37]

Ms. Martin also alleges Local 234 breached its duty of fair representation under Pennsylvania state law. She alleges Local 234 did not represent her in good faith, missed deadlines, subjected her to hostile and discriminatory questioning, and refused to further pursue her grievance for discriminatory reasons.[38] She asserts Local 234 refused to further pursue her grievance because of her race, disability, and request for accommodations.[39] Ms. Martin observed Local 234 engage in a pattern of "more frequently" pursuing grievances for Caucasian employees than for African American employees.[40] She alleges Local 234 refused to arbitrate her grievance because she is not Caucasian.[41] She alleges Local 234 made an "arbitrary, discriminatory, grossly negligent, and [] bad-faith" decision when it decided not to further pursue her grievance.[42] She asks us to order Local 234 to arbitrate SEPTA's alleged breach of the collective bargaining agreement to remedy her state law claims.[43]

4

Ms. Martin also alleges SEPTA and Local 234 "conspired to transfer, accommodate, and excuse policy violations by Caucasian employees as compared to African American employees."[44] She claims Local 234's refusal to arbitrate on her behalf is "the product of this practice and conspiracy . . . to favor Caucasian employees over African[ ]American employees."[45] Ms. Martin seeks damages from SEPTA for conspiring with Local 234 to favor Caucasian employees over African American employees in the grievance process.[46]

Ms. Martin asserts federal discrimination claims against SEPTA and Local 234. She alleges SEPTA and Local 234 discriminated against her on the basis of race, violating her right to make and enforce contracts under section 1981 of the Civil Rights Act of 1866.[47] She further alleges SEPTA retaliated against her because of her disability, in violation of the Family and Medical Leave Act.[48]

## II.    Analysis

Local 234 moves to dismiss both claims against it.[49] It argues Ms. Martin did not plead facts supporting her fair representation claim or her racial discrimination claim.[50] Local 234 separately argues we should decline to exercise supplemental jurisdiction over Ms. Martin's state law fair representation claim if we dismiss her federal racial discrimination claim.[51]

SEPTA separately moves to dismiss only the breach of contract claim against it.[52] SEPTA argues Ms. Martin may bring this breach of contract claim only if she properly alleges her fair representation claim against Local 234.[53] SEPTA contends we must dismiss the breach of contract claim if we dismiss Ms. Martin's fair representation claim.[54] SEPTA does not move to dismiss the racial discrimination or Family and Medical Leave Act retaliation claims against it.

We grant Local 234's Motion to dismiss the section 1981 racial discrimination claim because Ms. Martin (after two attempts) does not allege sufficient facts allowing us to plausibly

infer Local 234 intended to, or did, discriminate against her on the basis of race. We deny Local 234's Motion to dismiss the fair representation claim because Ms. Martin alleges facts allowing us to plausibly infer Local 234 breached its duty by engaging in arbitrary conduct. We deny SEPTA's Motion to dismiss the breach of contract claim because Ms. Martin properly pleads her fair representation claim against Local 234. Ms. Martin may proceed to discovery on her fair representation claim against Local 234 and all claims against SEPTA.

### A.    We dismiss the racial discrimination claim against Local 234.

Ms. Martin alleges Local 234 discriminated against her on the basis of race by subjecting her to questioning based on racist stereotypes and by refusing to arbitrate her grievance because she is African American in violation of section 1981 of the Civil Rights Act of 1866.[55] Local 234 argues Ms. Martin's racial discrimination claim fails for two reasons. First, Local 234 argues Ms. Martin did not properly plead racial discrimination as the "but for" cause of Local 234's actions.[56] Ms. Martin counters discriminatory conduct can have multiple but-for causes.[57] We agree with Ms. Martin as a matter of law. Discriminatory conduct can have multiple but-for causes.[58]

Second, Local 234 argues Ms. Martin has not alleged enough facts allowing us to plausibly infer Local 234 discriminated against Ms. Martin because she is African American.[59] Ms. Martin counters she supports her allegations of racially stereotyped questioning and racially discriminatory arbitration practices with sufficient facts.[60] Ms. Martin further argues our Court of Appeals and our colleagues "recognize[] stereotyped characterizations invoking racial or cultural assumptions constitute circumstantial evidence of discriminatory animus."[61] We agree with how Ms. Martin describes the law but find she has not alleged sufficient direct or circumstantial facts allowing us to plausibly infer Local 234 discriminated against her on the basis of race. We dismiss the racial discrimination claim against Local 234 without prejudice.

To plead a section 1981 racial discrimination claim, Ms. Martin must allege: (1) she belongs to a racial minority; (2) Local 234 intended to discriminate against her on the basis of race; and (3) the discrimination prevented Ms. Martin from exercising one of the rights enumerated in section 1981.[62] Ms. Martin "may raise an inference of discrimination in various ways, including by alleging that similarly situated comparators were treated more favorably by their employer, similar racial discrimination against other employees, or direct evidence of racial animus such as discriminatory statements allegedly made by supervisors."[63] "[S]imply stating [she] endured race discrimination without presenting allegations suggestive of such conduct does not meet [our Court of Appeals'] pleading standards."[64] Ms. Martin does not need to plead detailed factual allegations, but she "must allege sufficient facts to suggest that discovery may lead to evidence" supporting each element of her claim.[65]

Ms. Martin makes three allegations. First, she alleges Local 234 agents asked her "whether she had ever seen dead bodies before" during the June 9, 2025 meeting.[66] She asks us to infer this question "contained the racist suggestion that as an African[ ]American, [Ms. Martin] should be less impacted by being a witness to a homicide than a non-African[ ]American because of stereotypes that African[ ]Americans are witness to higher crime levels than non-African Americans."[67] Second, Ms. Martin alleges "Local 234 has engaged in an observable pattern of pursuing grievances for Caucasian individuals, and have likewise engaged in an observable pattern of not pursuing grievances for African[ ]American employees."[68] Ms. Martin bases this observation on her "long-term employment with SEPTA and her knowledge of Local 234's prior representation of other employees."[69] And third, Ms. Martin alleges Local 234 "failed to arbitrate [her] grievance because [she] was not Caucasian" and "declined to pursue [her] arbitration because they held a racist stereotype."[70]

We are sympathetic to the effects of witnessing a horrific act of violence, but Ms. Martin does not allege sufficient facts to support her claim of racial discrimination. Ms. Martin may perceive the questions Local 234 agents asked as insensitive, but we cannot plausibly infer Local 234 intended to discriminate on the basis of race by asking a fact question related to the crime she witnessed. Ms. Martin cites three cases asking us to reach the opposite conclusion.[71] In the cited cases the employer (or its agents) used language containing racial epithets or specific terms referencing the employee's race or national origin.[72] Ms. Martin has not alleged Local 234 agents made comparable statements about her race. We cannot plausibly infer Local 234 agents acted with racist intent or held racial stereotypes without similar specific facts.

Ms. Martin's "observable pattern" and "failure to arbitrate" allegations are both conclusory.[73] Both lack specific facts. Our colleagues routinely dismiss discrimination claims based only on conclusory statements.[74] But our colleagues deny motions to dismiss when employees allege facts showing the union provided more vigorous advocacy to similarly situated white employees or undermined the defenses of similarly situated African American employees to ensure their dismissal.[75] We cannot plausibly infer Local 234 discriminated against Ms. Martin without specific facts alleging Local 234's racially discriminatory conduct.

We dismiss Ms. Martin's racial discrimination claim against Local 234 because she has not alleged specific facts allowing us to plausibly infer Local 234 intended to, or did, discriminate against her on the basis of race. We dismiss the racial discrimination claim against Local 234 without prejudice.

### B.    We retain jurisdiction over the fair representation claim.

Local 234 argues we should decline supplemental jurisdiction over the state law duty of fair representation claim once we dismiss Ms. Martin's section 1981 claim against it.[76] Ms. Martin

counters we should retain supplemental jurisdiction over the fair representation claim because it shares a common nucleus of operative fact with her federal law claims against SEPTA, which SEPTA did not move to dismiss.[77] We agree with Ms. Martin. We retain jurisdiction over the fair representation claim against Local 234 because it presents part of the same case or controversy as Ms. Martin's federal law claims against SEPTA.[78]

We retain jurisdiction over the fair representation claim at this stage under Pennsylvania state law. The General Assembly, through the Pennsylvania Employee Relations Act, identifies an aggrieved public employee's sole judicial remedy when her union allegedly breached its duty of fair representation is an action in equity to compel arbitration.[79] We preserve joinder of Local 234 and SEPTA parties to provide this remedy if Ms. Martin proves her fair representation and breach of contract claims.[80]

### C.    We deny Local 234's Motion to dismiss the fair representation claim.

Ms. Martin alleges Local 234 breached its duty of fair representation under Pennsylvania state law by engaging in multiple forms of arbitrary, discriminatory, and bad-faith conduct.[81] Local 234 argues it cannot be held liable for breaching its duty of fair representation because Ms. Martin did not plead facts allowing us to reasonably infer Local 234 engaged in arbitrary, discriminatory, or bad faith conduct under Pennsylvania law.[82] Ms. Martin counters her racial discrimination claims support her allegation of discriminatory conduct, Local 234 concedes it engaged in bad faith conduct, and Local 234 handled her grievance in an arbitrary manner.[83] We agree with Ms. Martin. She alleges sufficient facts (though barely) to plausibly infer Local 234 engaged in arbitrary conduct in breach of its duty of fair representation under Pennsylvania law.

Local 234 owes a statutory duty under Pennsylvania law to fairly represent all employees in a bargaining unit where it is the exclusive bargaining representative of those employees.[84] Local

9

234 "does not breach its duty of fair representation merely by refusing to bring a grievance to arbitration."[85] Local 234 only "breach[es] its duty of fair representation if its actions are 'arbitrary, discriminatory, or in bad faith.'"[86] Ms. Martin only needs to allege one form of prohibited conduct to survive Local 234's motion to dismiss, not all three.[87]

To show arbitrariness, Ms. Martin must allege Local 234's discretionary decisions and choices fell "so far outside a wide range of reasonableness as to be irrational."[88] This standard is "highly deferential" to Local 234 and does not allow us to impose liability for decisions later found "ultimately wrong" or even negligent.[89] But Local 234 "must be vigorous enough so that available opportunities to present [a] grievance are utilized, and sufficiently thorough so that the basic issues are presented in an understandable fashion."[90] Local 234 "may not arbitrarily ignore a meritorious grievance or process it in a perfunctory fashion."[91] Our Court of Appeals instructs "[mere] ineptitude or negligence in the presentation of a grievance by a union has almost universally been rejected as the type of conduct intended to be included within the term 'perfunctory'" but "require[s] a showing of actual bad faith or arbitrary conduct."[92] To show bad-faith conduct, Ms. Martin must allege Local 234 engaged in fraud, deceit, or dishonesty.[93]

Ms. Martin alleges Local 234 committed a series of procedural failures which allegedly amount to arbitrary conduct. First, Local 234 did not call Ms. Martin at the April 10, 2025 Labor Relations Step hearing despite section 201(a) of the collective bargaining agreement allowing Local 234 to call witnesses.[94] Second, Local 234 violated its obligations under Section 201(I)(3) when it failed to toll the grievance and arbitration timeline during her ongoing workers' compensation dispute.[95] And third, Local 234 did not meet with Ms. Martin to discuss arbitration until after the thirty-working-day deadline to request arbitration elapsed.[96]

Ms. Martin's first allegation is a disagreement over strategy rather than arbitrary conduct. Local 234 "has broad discretion in whether and how to proceed with an employee's grievance."[97] Ms. Martin must allege additional facts for us to plausibly infer Local 234 made an irrational decision not to call her as a witness.

Reading Ms. Martin's second and third allegations in the light most favorable to her allows us to plausibly infer Local 234 engaged in arbitrary or bad faith conduct. Ms. Martin's allegations Local 234 failed to toll the grievance timeline, missed one arbitration deadline, and violated at least one contractual obligation are sufficient to create plausible uncertainty as to Local 234's motives or diligence. Our federal and state colleagues reach different conclusions based on the pleaded facts when reviewing a union's motion to dismiss these fair representation claim in other close calls.[98] In these close calls, our colleagues frequently analyze the union members' claims within the broader context of their allegations to determine if the union member pleaded facts allowing us to plausibly infer the union breached its duty of fair representation.

We look to the Pennsylvania Commonwealth Court's finding the union member did not plead a fair representation claim in *Connelly v. Steel Valey Education Association*.[99] The facts presented there are distinct from Ms. Martin's claim. The employer sent notice of furlough letters to several union members.[100] The union members believed the school district violated Pennsylvania law by sending the furlough letters before receiving approval for the furlough plan from the Pennsylvania Department of Education.[101] The union members filed a grievance through the union which the employer denied.[102] The union promised to arbitrate.[103] The union then learned the employer received approval of the furlough plan.[104] The union sought legal advice to determine whether the members' grievances still had merit.[105] An attorney for the Pennsylvania State Education Association advised the claims lacked merit once the employer received approval for

11

the furlough plan.[106] The union withdrew the grievances.[107] The Commonwealth Court found the union's decision to seek and then rely upon legal advice could not be considered either arbitrary or bad faith conduct.[108] The union members advanced a second, contradictory theory: the union withdrew their grievances only to "curry favor" with the employer while negotiating a new collective bargaining agreement.[109] This "ulterior motive" theory could not overcome the union's reliance on outside legal advice.[110] The Commonwealth Court held the union had legitimate grounds to withdraw the grievance and affirmed dismissal of the fair representation claim.[111]

Judge Pappert reviewed a different fact pattern and found differently in *Lopez v. Transportation Workers Union Local 234*.[112] The union member alleged his union acted in bad faith when it decided not to arbitrate his grievance even though the union knew the employer possessed a drug test report which exculpated him.[113] The union argued after a review of "the facts, evidence and arguments made during the grievance procedure, the [u]nion decided that the [union member's] case could not be won in arbitration."[114] Judge Pappert found "the [union member] alleges—albeit barely—conduct that plausibly rises to the level of bad faith or arbitrary conduct" because he could reach no other finding without the benefit of a more complete record.[115]

In *Wolfgramm v. Communications Workers of America Local 13301*, the union member alleged almost no details about the union grievance process but still "sufficiently pled that [the union] processed her grievance in an arbitrary and perfunctory manner."[116] The union member alleged the union "refused to properly grieve and prosecute the grievance, and vaguely allege[d] that [the union] manipulated the terms of the [collective bargaining agreement], failed to enforce the timelines in the [collective bargaining agreement], and fabricated provisions of the [collective bargaining agreement] and Bylaws to prevent Plaintiff from being properly represented."[117] Judge Rufe found the union member did not plead "which terms, timelines, or provisions" of the

collective bargaining agreement the union "violated, fabricated, or manipulated" but the union member's additional "sparse" allegations created a need to understand "the basic issues surrounding [the] grievance."[118] Judge Rufe denied the union's motion to dismiss so the union member could seek discovery to create a more complete record, even if the record "might rebut [the union member's] fair representation claims[.]"[119]

Judge Munley also looked to the "picture painted by the [union member]" to deny a union's motion to dismiss a fair representation claim in *Flynn v. City of Scranton*.[120] The union member alleged her employer "suspended [her] without pay[,] prohibited [her] from bidding for other available clerical positions in violation of the [collective bargaining agreement,]" and subjected her to additional professional discipline.[121] But her union only grieved and arbitrated the union member's inability to bid into a new position.[122] The union member alleged the union overlooked other misconduct by the employer, including moving another unionized employee into a long-unfilled position desired by the plaintiff and allowing the employer to create and fill a non-union position to later backfill the now-terminated plaintiff.[123] Judge Munley noted she "[did] not have the entire factual landscape to review the [union's] actions" under the arbitrary, discriminatory, or bad faith standard but still found the union member had alleged sufficient specific examples of union misconduct to advance a plausible fair representation claim.[124]

We reach the same conclusion as Judges Pappert, Rufe, and Munley. Like our colleagues, we do not have an entire factual picture to review today. But unlike in *Connelly*, Ms. Martin has not advanced contradictory theories of how Local 234 breached its duty of fair representation. Ms. Martin's pleaded facts and their broader context are more like the facts pleaded by union members in *Lopez*, *Wolfgramm*, and *Flynn*. Ms. Martin alleges specific facts about Local 234's missed deadlines and failures to toll grievance timelines which fit within the broader context of her

13

grievance dispute to allow us to plausibly infer Local 234 may have breached its duty of fair representation.

We deny Local 234's Motion to dismiss the fair representation claim.

### D.    We deny SEPTA's partial motion to dismiss.

SEPTA moves to dismiss only the breach of contract claim against it.[125] SEPTA argues Ms. Martin's breach of contract claim "fails if [her] breach of fiduciary duty claim against the [Local 234] is dismissed."[126] SEPTA offers no alternative arguments to dismiss Ms. Martin's breach of contract claim on the merits.

We deny SEPTA's motion to dismiss the breach of contract claim because we deny Local 234's Motion to dismiss Ms. Martin's fair representation claim.

### III.    Conclusion

We grant in part and deny in part Local 234's Motion and deny SEPTA's partial motion. Ms. Martin may proceed on her fair representation claim against Local 234 and all claims against SEPTA.

---

[1] ECF 16 ¶ 13.

[2] *Id.* ¶ 14.

[3] *Id.* ¶ 15.

[4] *Id.* ¶ 16.

[5] *Id.* ¶ 17.

[6] *Id.* ¶¶ 10, 62.

[7] *Id.* ¶ 18.

[8] *Id.* ¶ 19.

[9] *Id.* ¶ 20.

[10] *Id.* ¶ 21.

[11] *Id.* ¶ 22.

[12] *Id.* ¶ 23.

[13] *Id.* ¶¶ 23–24.

[14] *Id.* ¶ 26.

[15] *Id.*

[16] *Id.* ¶ 27.

[17] *Id.* ¶ 28.

[18] *Id.* ¶ 29.

[19] *Id.* ¶ 32. None of the parties provided us with a copy of the collective bargaining agreement between SEPTA and Local 234. We accept Ms. Martin's allegations as to grievance procedure and deadlines as true for the purposes of resolving Local 234's and SEPTA's Motions to dismiss.

[20] *Id.*

[21] *Id.* ¶ 33.

[22] *Id.* ¶ 65.

[23] *Id.* ¶ 34.

[24] *Id.* ¶ 35.

[25] *Id.* ¶ 36.

[26] *Id.* ¶ 66.

[27] *Id.* ¶ 67. Ms. Martin does not specify which section of the collective bargaining agreement sets this deadline for filing arbitration. We accept Ms. Martin's allegation this deadline exists as true at this stage.

[28] *Id.* ¶ 37.

[29] *Id.* ¶ 68.

[30] *Id.* ¶ 37.

[31] *Id.*

[32] *Id.* ¶ 38.

[33] *Id.* ¶ 39.

15

[34] *Id.* ¶ 70.

[35] *Id.* ¶ 40.

[36] ECFs 1, 16.

[37] ECF 16 ¶¶ 55–60.

[38] *Id.* ¶¶ 65–72.

[39] *Id.* ¶¶ 41, 70–71.

[40] *Id.* ¶¶ 42, 99.

[41] *Id.* ¶ 101.

[42] *Id.* ¶ 51

[43] *Id.* ¶ 76.

[44] *Id.*¶ 52.

[45] *Id.* ¶ 53.

[46] *Id.* ¶ 60.

[47] *Id.* ¶¶ 93–102; 42 U.S.C. § 1981.

[48] *Id.* ¶¶ 77–92.

[49] ECFs 17, 17-1. Local 234 moves to dismiss for failure to state a claim under Federal Rule of Civil Procedure Rule 12(b)(6).

A complaint must state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is to test the sufficiency of a complaint under the plausibility pleading standard. *Zanetich v. Wal-Mart Stores East, Inc.*, 123 F.4th 128, 138 (3d Cir. 2024). A plaintiff must include "sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Huertas v. Bayer US LLC*, 120 F.4th 1169, 1174 (3d Cir. 2024) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Kalu v. Spaulding*, 113 F.4th 311, 325 (3d Cir. 2024) (quoting *Iqbal*, 556 U.S. at 678). "'Plausibly' does not mean 'probably,' but 'it asks for more than a sheer possibility that a defendant has acted unlawfully.'" *Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, 605 U.S. 280, 291 (2025) (quoting *Iqbal*, 556 U.S. at 678). A pleading offering "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" is insufficient. *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

Our Court of Appeals requires us to apply a three-step analysis to a 12(b)(6) motion: (1) we "tak[e] note of the elements a plaintiff must plead to state a claim"; (2) we "identify allegations that … 'are not entitled to the assumption of truth' because those allegations 'are no more than conclusion[s]'"; and, (3) "'[w]hen there are well-pleaded factual allegations,' we 'assume their veracity' … in addition to assuming the veracity of 'all reasonable inferences that can be drawn from' those allegations … and, construing the allegations and reasonable inferences 'in the light most favorable to the [plaintiff]'…, we determine whether they 'plausibly give rise to an entitlement to relief.'" *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (internal citations omitted).

[50] ECF 17-1 at 8–13; *id.* at 4–6.

[51] ECF 17-1 at 6–8.

[52] ECF 18.

[53] ECF 18 at 2–3. SEPTA incorporates sections III.B and C of Local 234's Motion to dismiss in support of dismissing the fair representation claim against Local 234. *Id.* at 3, n.2. SEPTA argues for dismissal under *Martino v. Transport Workers' Union Local 234*, 480 A.2d 242, 245 (Pa. 1984), because "[i]n the absence of a cognizable breach of fiduciary duty claim against the [u]nion, [Ms. Martin] cannot maintain her claim against SEPTA for breach of the Collective Bargaining Agreement (Count I of the Amended Complaint)." *Id.* at 2.

[54] *Id.* at 2–3.

[55] ECF 16 ¶¶ 98–102; 42 U.S.C. § 1981.

[56] ECF 17-1 at 5–6.

[57] ECF 21 at 4–6.

[58] *See Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 332 (2020) ("This ancient and simple but for common law causation test, we have held, supplies the default or background rule against which Congress is normally presumed to have legislated when creating its own new causes of action. That includes when it comes to federal antidiscrimination laws like § 1981." (internal citations and quotations omitted)); *id.* at 333 ("[A] plaintiff bears the burden of showing that race was a but-for cause of its [section 1981] injury."); *Bostock v. Clayton Cnty.*, 590 U.S. 644, 656 (2020) ("Often, events have multiple but-for causes. . . . When it comes to Title VII, the adoption of the traditional but-for causation standard means a defendant cannot avoid liability just by citing some other factor that contributed to its challenged employment decision. So long as the plaintiff 's sex was one but-for cause of that decision, that is enough to trigger the law."); *Warrick v. New Jersey Off. of Att'y Gen.*, No. 20-14274, 2022 WL 1763855, at 3–4 (D.N.J. May 31, 2022) (applying *Bostock* and explaining § 1981 discrimination claims may involve multiple but-for causes.

[59] ECF 17-1 at 6.

[60] ECF 21 at 6–10.

[61] *Id.* at 7 (citing *Castleberry v. STI Group*, 863 F.3d 259, 266–67 (3d Cir. 2017); *Qin v. Vertex, Inc.*, 100 F.4th 458, 475 (3d Cir. 2024); *Curry v. Devereux Found.*, 541 F. Supp. 3d 555, 561–62 (E.D. Pa. 2021).

[62] *Castleberry*, 863 F.3d at 266 (internal citation omitted).

[63] *Riley v. Borough of Eddystone*, No. 24-1835, 2024 WL 4137310, at *3 (E.D. Pa. Sept. 10, 2024) (citing *Golod v. Bank of Am. Corp.*, 403 F. App'x 669, 703 n.2 (3d Cir. 2010)).

[64] *Danao v. ABM Janitorial Servs.*, 142 F. Supp. 3d 363, 377 (E. D. Pa. 2015) (quoting *Funayama v. Nichia Am. Corp.*, No. 08-5599, 2009 WL 1437656, at *5 (E.D. Pa. May 21, 2009).

[65] *Funayama*, 2009 WL 1437656, at *5 (citing *McTernan v. Cty. of York*, 564 F.3d 636, 646 (3d Cir. 2009)) (discussing how to apply federal pleading standards to claims of racial discrimination).

[66] ECF 16 ¶ 37.

[67] *Id.* ¶ 43.

[68] *Id.* ¶ 42.

[69] *Id.* ¶ 41.

[70] *Id.* ¶¶ 100–01.

[71] ECF 21 at 7.

[72] *Castleberry v. STI Grp.*, 863 F.3d at 266 (reversing the dismissal of a section 1981 claim because employees alleged "they were the only black males assigned to their specific site, they were assigned undesirable duties, they were the targets of racial epithets, and they were fired twice due to their race"); *Qin*, 100 F.4th at 468, 475 (holding the trial court overlooked a genuine dispute of material fact when the Chinese employee received a negative performance review based on "cultural differences," which were explained to him as based on "[his] cultural background, how [he] grew up" and whether "they make [him] fit or not fit within [defendant's corporation]"); *Curry v. Devereux Found.*, 541 F. Supp. 3d at 560-62 (denying a motion to dismiss when the employee alleged her supervisor used a specific racist trope reflecting a long-standing negative stereotypical of African American women, allowing Judge McHugh to reasonably infer the supervisor's racist belief "played a part in . . . promotion and hiring decisions").

[73] Ms. Martin concedes her "failure to arbitrate" allegation is "in some sense, [a] conclusion[]" which describes "a historical, albeit contested, fact." ECF 21 at 9. Ms. Martin is correct Local 234 failing to arbitrate her grievance is a historical fact. The allegation Local 234 did so because Ms. Martin is not Caucasian is a conclusory allegation which she possibly could support by alleging additional specific facts.

[74] *See, e.g.*, *Gbohunmi v. Momentum Advisory Collective*, No. 24-1677, 2025 WL 2724377, at *2 (E.D. Pa. Sept. 24, 2025) (dismissing a section 1981 claims because the former employee's allegation "[her employer] intentionally discriminated against [her] by treating [her] differently

from similarly situated non-African American employees" contained only a legal conclusion, not factual allegations); *Deserne v. Madlyn and Leonard Abramson Ctr. for Jewish Life, Inc.*, No. 10-3699, 2011 WL 605699, at *2 (E.D. Pa. Feb. 16, 2011) (dismissing a section 1981 claim where an employee alleged Black Haitian employees were denied performance evaluations and raises while Caucasian employees received them but failed to plead facts supporting discriminatory intent and relied on unidentified comparators and decisionmakers); *Wilkins v. Bozzuto & Assocs., Inc.*, No. 09-2581, 2009 WL 4756381, at *3 (E.D. Pa. Dec. 10, 2009) (dismissing a section 1981 claim where an employee made only conclusory allegations his employer fired him on the basis of race but did "not offer facts that suggest he was treated differently in the performance of his employment contract than any individual of another race").

[75] *See Danao*, 142 F. Supp. 3d at 377–78 ("In the Amended Complaint, however, [the terminated union member] has sufficiently pled specific facts regarding Caucasian, Union-member janitors, who were consistently given more vigorous advocacy than African American Union members. He has also asserted that the Union leaders/decisionmakers made racially discriminatory remarks and had a general pattern of undermining the defense of African American Union members so as to ensure their dismissal.").

[76] ECF 17-1 at 6–8.

[77] ECF 21 at 17–18.

[78] "By its language § 1367(a) confers jurisdiction in mandatory terms to include those cases 'which form part of the same case or controversy under Article III of the United States Constitution' (except as expressly excluded by statute or as provided for in subsections (b) and (c))." *New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.*, 101 F.3d 1492, 1509 (3d Cir. 1996). "The language of § 1367(a) stating that it applies 'except as *expressly* provided otherwise by federal statute' (emphasis supplied) and that it shall 'include claims that involve the joinder or intervention of additional parties,' confirms this reading of the statute." *Id.* (quoting 28 U.S.C. § 1367(a)).

[79] *DuBose v. District 1199C, Nat. Union of Hosp. and Health Care Emps.*, 105 F. Supp. 2d 403, 416 (E.D. Pa. 2000) (citing *Martino*, 480 A.2d at 252).

[80] *Martino*, 480 A.2d 245. *See also Gustafson v. Am. Fed. of State, Cnty., and Mun. Emps., Council 13*, 349 A.3d 970, 986 (Pa. 2026) (holding the public employer is an indispensable party to a union member's duty of fair representation action because the sole remedy under the Pennsylvania Employee Relations Act for a union's breach is an order compelling *nunc pro tunc* arbitration of the employee's grievance).

[81] ECF 16 ¶¶ 65–75.

[82] ECF 17-1 at 8–13.

[83] ECF 21 at 10–17.

[84] *Gustafson*, 349 A.3d at 980 ("[A] union owes this duty of fair representation to all members of the bargaining unit it is certified to serve, union members and non-members alike."); *Jenkins v.*

*Transp. Workers Union, Local 234*, No. 19-1904, 2019 WL 6219211, at *2 (E.D. Pa. Nov. 21, 2019) ("A union certified as an exclusive bargaining representative has a correlative duty of fair representation." (quoting *Lopez v. Transp. Workers Union, Local 234*, No. 16-5515, 2018 WL 1757726, at *4 (E.D. Pa. Apr. 12, 2018) ("*Lopez II*") (internal citation omitted))).

[85] *Nannay v. Aker Phila. Shipyard, Inc.*, No. 09-370, 2010 WL 1878118, at *3 (E.D. Pa. May 10, 2010) (citing *Vaca v. Sipes*, 386 U.S. 171, 190 (1967)).

[86] *Lopez II*, 2018 WL 1757726, at *4 (quoting *Air Line Pilots Ass'n, Intl. v. O'Neill*, 499 U.S. 65, 67 (1991)); *DiGregorio v. Bristol Twp. Police Benevolent Ass'n*, 333 A.3d 1082 (Table), No. 232 C.D. 2023, 2025 WL 46404, at *5 (Pa. Commw. Jan. 8, 2025) ("[A] union breaches the duty of fair representation 'if its actions towards its members are due to arbitrariness, discrimination or bad faith.'" (quoting *Connelly v. Steel Valley Educ. Ass'n*, 119 A.3d 1127, 1134 (Pa. Commw. 2015) (internal quotation omitted))).

[87] *See Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 44–45 (1998) (considering only whether a union member properly alleged arbitrary or bad faith conduct with no allegation of discriminatory conduct).

[88] *Robinson v. Nat'l R.R. Passenger Corp.*, No. 18-341, 2019 WL 3310333, at *20 (E.D. Pa. July 22, 2019) (quoting *Bakos v. Am. Airlines, Inc.*, 748 F. App'x 468, 471–72 (3d Cir. 2018) (internal citation omitted)).

[89] *Lopez II*, 2018 WL 1757726, at *5 (internal quotations omitted); *see also United Steelworkers of Am. v. Rawson*, 495 U.S. 362, 372–73 (1990) ("[M]ere negligence, even in the enforcement of a collective-bargaining agreement, would not state a claim for breach of the duty of fair representation."); *Bazarte v. United Transp. Union*, 429 F.2d 868, 872 (3d Cir. 1970) (holding "proof that the union may have acted negligently or exercised poor judgment is not enough to support a claim of unfair representation" and a union has discretion to "settle or even to abandon a grievance, so long as it does not act arbitrarily"); *Weber v. Potter*, 338 F. Supp. 2d 600, 606 (E.D. Pa. 2004) ("[A] union has broad discretion to determine what issues to raise in a grievance proceeding and how those issues are to be raised.").

[90] *Findley v. Jones Motor Freight, Div. Allegheny Corp.*, 639 F.2d 953, 961 (3d Cir. 1981).

[91] *Lopresti v. Cnty. of Lehigh*, No. 12-2832, 2013 WL 2449190, at *4 (E.D. Pa. June 6, 2013) (quoting *Riley v. Letter Carriers Local No. 380*, 668 F.2d 224, 228 (3d Cir. 1981)).

[92] *Lopresti*, 2013 WL 2449190, at *4 (quoting *Riley*, 668 F.2d at 228).

[93] *Robinson*, 2019 WL 3310333, at *20 (quoting *White v. White Rose Food*, 237 F.3d 174, 179 (2d Cir. 2001)); *Anderson v. Pleasant Valley Educ. Support Pro.'s Ass'n*, 272 A.3d 999 (Table), 2022 WL 200342, at *5 (Pa. Commw. Jan. 24, 2022) ("Bad faith, for its part, requires a showing that a union either acted in a fraudulent, deceitful, or dishonest manner or with an improper motive.").

[94] ECF 16 ¶¶ 34, 65.

[95] *Id.* ¶ 66.

[96] *Id.* ¶ 67.

[97] *Anderson*, 2022 WL 200342, at *5 (quoting *Weber*, 383 F. Supp. 2d. at 606).

[98] In most cases, the high standards for alleging arbitrary or bad faith union conduct allow our colleagues to grant a union's motion to dismiss following a short analysis. *See, e.g.*, *Delach v. Lindy Paving Inc.*, No. 23-1632, 2024 WL 164062, at *3–4 (W.D. Pa. Apr. 16, 2024), *reconsideration denied*, 2024 WL 2273411 (W.D. Pa. May 20, 2024), *and aff'd*, No. 24-2036, 2025 WL 1111282 (3d Cir. Apr. 15, 2025) (granting the union's motion to dismiss because the union determined the union member's claims had no merit after the union properly exercised its discretion to seek a legal opinion interpreting the collective bargaining agreement); *Marsh v. Union R.R. Co., LLC*, No. 20-1145, 2021 WL 4459764, at *8–9 (W.D. Pa. Sept. 29, 2021) (granting the union's motion to dismiss because the union member only alleged conclusory elements of arbitrary conduct instead of specific facts alleging such conduct occurred).

But our colleagues have denied a union's motion to dismiss fair representation claims without context-specific qualifications in other cases where the union member pleads such substantial allegations of arbitrary or bad faith conduct . *See, e.g.*, *Juisti v. City of Chester*, No. 18-2317, 2018 WL 5249930, at *8–9 (E.D. Pa. Oct. 22, 2018) (finding the union member stated a claim for bad faith conduct because the union allegedly refused to address "any of his numerous grievances"). Other colleagues have found allegations of the union's own conduct to be sufficient—"albeit barely"—to deny the union's motion to dismiss a fair representation claim without having to consider the union's conduct in light of the broader context of the union member's allegations. *Danao*, 142 F. Supp. 3d at 372–73 (finding the union's last-minute replacement of the union member's attorney prior to a hearing, the new lawyer's refusal to advance previously agreed-upon arguments at the hearing, the union's failure to prepare the employee for the hearing, and the unions refusal to use informal means to address the African American member's grievances as it did for Caucasian members properly stated a fair representation claim).

[99] *Connelly,* 119 A.3d at 1133–36.

[100] *Id.* at 1129.

[101] *Id.* at 1130.

[102] *Id.*

[103] *Id.*

[104] *Id.* at 1130–31.

[105] *Id.* at 1131.

[106] *Id.*

[107] *Id.*

[108] *Id.* at 1136.

[109] *Id.* at 1131.

[110] *Id.* at 1136.

[111] *Id.*

[112] No. 16-5515, 2017 WL 2633468, at *5–6 (E.D. Pa. June 19, 2017) ("*Lopez I*").

[113] *Id*.

[114] *Id*. at *6.

[115] *Id*.

[116] No. 19-3701, 2022 WL 952634, at *10–11 (E.D. Pa. Mar. 30, 2022).

[117] *Id.* at *10 (internal quotations omitted).

[118] *Id.* at *10–11.

[119] *Id.* at *11.

[120] No. 24-64, 2024 WL 4839367, at *12 (M.D. Pa. Nov. 20, 2024).

[121] *Id.*

[122] *Id.*

[123] *Id.*

[124] *Id.*

[125] ECF 18.

[126] *Id.* at 3.