**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CARMELLA MARTIN** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 25-6468** |
| | : | |
| **SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY** | : | |

# MEMORANDUM

**KEARNEY, J.** **September 1, 2026**

An employer granted its employee cashier leave for her disabling emotional distress after she witnessed violence on the job in her below-street station. The employer sought to have the employee return after some time. The employee claimed she could not. An independent medical evaluator reported the employee could now return to work. The employee declined and applied for accommodations including a priority above-ground position. But a governing collective bargaining agreement did not allow the employer to give this employee priority for her requested above-ground job. So the employer and employee seemingly discussed another accommodation opportunity and it is unclear if the employer met her request. The employee did not return to work and her employer terminated her. The employee grieved this decision. The employer's hearing officer denied the grievance. The union decided her grievance lacked the merit necessary to support an arbitration process from the denial with the employer. A Worker's Compensation Board Judge also found in favor of the employer.

The employee then sued both her employer and her union for medical leave, disabilities and race discrimination, and retaliation. She also sued her employer and her union for breach of the collective bargaining agreement. We earlier allowed the employee leave to proceed into

discovery on limited claims. The parties completed discovery and the former employer and union now move for summary judgment arguing they are entitled to judgment as a matter of law.

The employee offers theories and speculation for which she did not adduce facts allowing us to find no genuine issues of material fact on her race discrimination, retaliation, and contract claims. She may proceed to trial against her employer claiming it did not provide her a reasonable accommodation under the Americans with Disabilities Act as we find genuine issues of material fact concerning whether her employer permitted her to work at an above-ground location as an accommodation.

## I. Undisputed material facts[1]

African American Carmella Martin worked for the Southeastern Pennsylvania Transportation Authority ("SEPTA") in a below-street level cashier position servicing customers.[2] Local 234 of the Transport Workers Union of Philadelphia represented Ms. Martin's interests as a union member working for SEPTA.[3] Ms. Martin witnessed a homicide on the job in April 2023.[4] She developed post-traumatic stress disorder, anxiety, and depression.[5] Ms. Martin took approved leave from her job under the Family and Medical Leave Act and filed a workers' compensation claim in 2023.[6]

Ms. Martin exhausted her Family Medical Leave Act leave on July 7, 2023.[7] She did not return to work and used sick time.[8] An independent medical examiner examined Ms. Martin as part of the workers' compensation claim process on September 28, 2023.[9] SEPTA warned Ms. Martin it would terminate her employment if she did not return to work after exhausting her sick time.[10] Ms. Martin did not return to work.[11] SEPTA terminated Ms. Martin for not returning to work on November 9, 2023.[12]

***SEPTA reinstated Ms. Martin after a medical examiner's report.***

The independent medical examiner determined Ms. Martin suffered a compensable work injury.[13] Ms. Martin required an accommodation to be placed at an above-ground position.[14] SEPTA learned Ms. Martin required an accommodation on December 5, 2023.[15] Ms. Martin filed a grievance through Local 234 challenging SEPTA's decision to fire her after her allotted sick time expired.[16] SEPTA and Ms. Martin stipulated Ms. Martin suffered a compensable work injury caused by witnessing the homicide.[17] A workers' compensation judge approved a stipulation between SEPTA and Ms. Martin.[18] SEPTA reinstated Ms. Martin, granted her retroactive workers' compensation benefits, restored all her sick time, and placed her on "Injured on Duty" leave.[19]

***Ms. Martin did not return to work and sought accommodation.***

Ms. Martin did not return to work in early 2024.[20] SEPTA, consistent with the collective bargaining agreement with her union, required Ms. Martin to undergo a subsequent medical evaluation in April 2024.[21] The same independent medical examiner now determined Ms. Martin could return to work without limitations.[22] SEPTA directed her to return to her pre-injury cashier job on May 20, 2024.[23] But Ms. Martin still did not return to work.[24] SEPTA placed Ms. Martin in the "sick book."[25] Ms. Martin's personal physician submitted a report disagreeing with independent medical examiner.[26]

SEPTA petitioned the workers' compensation board to suspend Ms. Martin's wage loss benefits after she did not return to work.[27] Ms. Martin requested a disabilities accommodation under the American with Disabilities Act seeking a transfer to an aboveground job placement.[28] Ms. Martin's physician and psychologist submitted medical paperwork to SEPTA's Disabilities Manager supporting her request.[29]

Ms. Martin and SEPTA addressed Ms. Martin's accommodation request over the phone and by email.[30] SEPTA claimed the collective bargaining agreement with Local 234 prohibited SEPTA from assigning Ms. Martin an aboveground position outside the quarterly employee picking process.[31] The parties agree Ms. Martin's "seniority would have allowed her to choose from several above-ground [sic] stations" during the summer 2024 picking process.[32] Ms. Martin did not participate in the picking process.[33]

***SEPTA again terminated Ms. Martin in December 2024 and Local 234 filed a grievance.***

Ms. Martin did not return to work in Summer 2024.[34] Ms. Martin waited until December 5, 2024 to file an Equal Employment Opportunity Commission charge against SEPTA for violating her rights under the Family and Medical Leave Act and the Americans with Disabilities Act.[35] Ms. Martin's allotted sick time expired.[36] SEPTA terminated Ms. Martin on December 17, 2024.[37] SEPTA terminated Ms. Martin "based on [] exhaustion" of her sick time.[38] Local 234 filed a grievance against SEPTA on behalf of Ms. Martin the same day.[39]

***Local 234 reviewed Ms. Martin's claim and declined to demand arbitration.***

SEPTA conducted a Labor Relations Step Hearing on April 10, 2025.[40] The hearing officer denied Local 234's grievance on Ms. Martin's behalf.[41]

The workers' compensation board judge granted SEPTA's May 23, 2024 petition to terminate Ms. Martin's workers' compensation benefits on April 20, 2025.[42] The Workers' Compensation Appeals Board later affirmed the decision.[43]

Ms. Martin appealed SEPTA's Labor Relations denial and requested Local 234 take her case to arbitration.[44] Local 234 Business Agent Steve Butler recommended Local 234 demand arbitration during a Local 234 meeting on May 12, 2025.[45] But most of the transportation business agents disagreed and Local 234 declined to demand arbitration on Ms. Martin's behalf.[46] Local 234's initial decision recommended not arbitrating the denial of Ms. Martin's claim.[47] Local 234

informed Ms. Martin, on May 14, 2025, it declined to demand arbitration because it did not believe Ms. Martin would win at arbitration.[48] Ms. Martin elected to appeal Local 234's decision.[49] Local 234's appeal committee met with Ms. Martin on June 9, 2025.[50] The President of Local 234's arbitration review committee sent Ms. Martin a letter on June 17, 2026 informing Ms. Martin Local 234 decided not to arbitrate her grievance because it believed the case could not be won in arbitration.[51] Ms. Martin amended her pending EEOC Charge on November 20, 2025.[52] She now included alleged violations related to her discharge by SEPTA on December 17, 2024.[53]

Ms. Martin sued SEPTA and Local 234 in November 2025.[54] Ms. Martin proceeded into discovery against SEPTA on her claims for race discrimination, Family and Medical Leave Act retaliation, disabilities discrimination and retaliation, and breach of the collective bargaining agreement.[55] She proceeded into discovery against Local 234 on her claims for disability discrimination and retaliation and breach of duty of fair representation.[56]

## II. Analysis

SEPTA and Local 234 timely moved for summary judgment on Ms. Martin's remaining claims.[57] Ms. Martin opposes summary judgment.[58] We deny SEPTA's motion for summary judgment on Ms. Martin's claim for failure to provide reasonable accommodation under the Americans with Disabilities Act.[59] We grant summary judgment on the remaining claims against SEPTA and all remaining claims against Local 234.

### A. Ms. Martin adduced no genuine issue of material fact as to SEPTA's race-based discrimination.

Ms. Martin claimed SEPTA fired her because of her race. SEPTA argues it fired Ms. Martin because she exhausted her sick leave. Congress, through Title VII, prohibits an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such

individual's race …."[60] To prevail on a race discrimination claim, Ms. Martin must first establish a prima facie of discrimination under the *McDonnell Douglas* burden-shifting analysis.[61] Ms. Martin must show (1) she is a member of a protected class; (2) she is qualified for the position; (3) she suffered an adverse employment action; and (4) the action occurred under circumstances which could give rise to an inference of intentional discrimination.[62]

If Ms. Martin meets her burden of establishing a prima facie case of discrimination, the burden shifts to SEPTA to articulate a legitimate, non-discriminatory reason for its adverse employment action.[63] If SEPTA meets its burden, the burden shifts back to Ms. Martin to show SEPTA's "proffered reason is merely pretext for intentional discrimination."[64] To show pretext, Ms. Martin "must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve [SEPTA's] articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of [SEPTA's] action."[65] Under the *McDonnell Douglas* burden-shifting framework, "the ultimate burden of proving intentional discrimination always rests with the plaintiff."[66]

**1. Ms. Martin cannot proceed under section 1981.**

Ms. Martin sues SEPTA under section 1981 for damages alleging race discrimination.[67] SEPTA argues Ms. Martin may not sue under section 1981 because section 1983 provides the sole remedy for her race discrimination claim.[68] We agree.[69]

Our Court of Appeals explained a private cause of action cannot be asserted against a municipal actor for violation of section 1981.[70] "[T]he express cause of action for damages created by [section] 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in [section] 1981 by state governmental units."[71]

Her exclusive remedy for damages against SEPTA is under section 1983. We must dismiss Ms. Martin's section 1981 claim against SEPTA as a matter of law.

**2. Ms. Martin did not adduce evidence of a comparator employee to support her prima facie case of race-based discrimination.**[72]

SEPTA does not dispute the first three elements of a prima facie case of race-based discrimination under section 1983.[73] SEPTA only argues Ms. Martin cannot demonstrate the fourth element of the prima facie case: her firing occurred under circumstances which could give rise to an inference of intentional discrimination.[74]

Ms. Martin may establish an inference of discrimination by demonstrating SEPTA treated similarly situated employees outside her protected class more favorably. "The central focus of the prima facie case is always whether the employer is treating some people less favorably than others because of their race, color, religion, sex, or national origin."[75]

Ms. Martin relies entirely on one comparator "DM" who she argues SEPTA treated more favorably. Our Court of Appeals instructs comparator employees "need not be identical but must be similarly situated in 'all material respects.'"[76] "All material respects" is determined by factors including whether the comparator employees "dealt with the same supervisor, were subject to the same standards, and shared similar job responsibilities" and "engaged in the same conduct."[77] A comparator employee "who holds a different job title or works in a different department is not similarly situated."[78]

DM and Ms. Martin are not similarly situated. DM and Ms. Martin had different jobs and different supervisors. Our Court of Appeals in *Qin* plainly instructed comparator employees who hold different job titles are not similarly situated.[79]

Ms. Martin did not adduce other evidence SEPTA treated similarly situated employees outside Ms. Martin's protected class more favorably. She does not cite other evidence.[80] While

comparator evidence is not the only way to support an inference of discrimination at the prima facie stage, Ms. Martin does not cite record evidence of similar racial discrimination of other employees or conduct by SEPTA suggesting racial animus.

Ms. Martin did not adduce evidence to meet her burden on the fourth prong of the prima facie case of race-based discrimination.[81]

**B. Ms. Martin did not adduce evidence creating a genuine issue of material fact as to a causal link between her April 2023 leave and December 2024 termination.**

Ms. Martin sued SEPTA for disabilities retaliation under the Americans with Disabilities Act arguing SEPTA retaliated against her by firing her for requesting Family and Medical Leave Act leave.[82] Ms. Martin admits the timing is too remote to be temporally related.[83] But Ms. Martin argues the entire context of her interactions with SEPTA are sufficient to raise the inference SEPTA terminated Ms. Martin because she requested leave under the Family and Medical Leave Act.[84] SEPTA argues it fired Ms. Martin for exhausting her sick leave seventeen months after her leave expired and Ms. Martin did not adduce evidence of a pattern of antagonism.[85] We agree with SEPTA and enter judgment as a matter of law on this claim.

Employees alleging retaliation claims under the Family and Medical Leave Act must first establish a prima facie case.[86] Family and Medical Leave Act retaliation claims follow the same *McDonnell Douglas* burden-shifting analysis as disability discrimination and retaliation claims.[87]

An employee establishes a prima facie Family and Medical Leave Act retaliation claim by adducing evidence showing: "(1) she invoked her right to FMLA-qualifying leave, (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation of rights."[88] Our Court of Appeals permits employees to show causation through "either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link."[89]

Temporal proximity is "unusually suggestive" if it is less than a week between the employee's exercise of their Family and Medical Leave Act rights and the adverse employment decision.[90] Our Court of Appeals assesses temporal proximity "from the first date on which the litigant engaged in [her] protected activity."[91]

SEPTA concedes Ms. Martin meets the first two elements of her prima facie case: Ms. Martin invoked her right to FMLA leave and SEPTA terminated Ms. Martin.[92] SEPTA instead argues Ms. Martin did not adduce evidence of a causal connection between her leave and her termination.[93] Ms. Martin argues the timing is part of the inference of antagonism, retaliatory animus, and pattern of hostility.[94] SEPTA disagrees. And so do we.

Where the temporal proximity between the requested leave and adverse employment outcome is not unusually suggestive we ask whether the circumstances as a whole are sufficient to raise an inference of retaliation.[95] Ms. Martin argues SEPTA's attempt to fire her in November 2023 is suggestive of retaliation.[96] But SEPTA did not finally terminate Ms. Martin until seventeen months after her leave expired.[97] SEPTA permitted Ms. Martin to use her sick leave and even reinstated her sick leave following the workers' compensation board decision and subsequent stipulation between Ms. Martin and SEPTA.[98] Ms. Martin admitted SEPTA terminated her because she exhausted her sick leave.[99]

Ms. Martin also argues the proximate cause of SEPTA firing her is its "functional denial" of her accommodation request in May-June 2024.[100] But Ms. Martin requested leave in April 2023, not May-June 2024.[101] SEPTA granted Ms. Martin's first request for leave and Ms. Martin took with leave from April 9, 2023 through July 7, 2023.[102] SEPTA did not terminate Ms. Martin until December 17, 2024.[103] SEPTA terminated Ms. Martin after she refused to return to work following the second independent medical evaluation and exhaustion of her sick leave.[104] Ms. Martin does

not adduce a material fact suggesting the contrary. She instead (candidly as she must) agrees SEPTA did not terminate her until seventeen months after she exhausted her leave.[105]

Ms. Martin further argues we should look to the pattern of hostility before the April 2023 incident.[106] Ms. Martin points us to no authority supporting her position. Ms. Martin asks us to find SEPTA's managers acted hostile towards her by withholding discretionary protections.[107] But SEPTA allowed Ms. Martin to use Family and Medical Leave Act protections from April 2023 until July 2023, take sick leave for four months thereafter, reinstated her sick time after Ms. Martin's workers' compensation claim prevailed, and allowed Ms. Martin to take sick leave for the entirety of 2024.[108]

Ms. Martin did not adduce a genuine issue of material fact allowing a fact finder to review a causal link between when she took FMLA leave in April 2023 and SEPTA terminating her in December 2024.

### C. Ms. Martin did not adduce evidence of a genuine issue of material fact concerning whether SEPTA denied her disabilities accommodation due to a retaliatory pretext.[109]

Ms. Martin asks us to find a causal connection between her protected activities (requesting reasonable accommodation, declining to return to work when SEPTA did not provide such accommodation, and filing an EEOC charge) and SEPTA's denial of her request to work at an aboveground station and SEPTA firing her.[110] Ms. Martin's argument contains one record cite: she requested an accommodation on May 13, 2024.[111] SEPTA refused the accommodation, and directed she return to work on May 20, 2024.[112] SEPTA moves for summary judgment on Ms. Martin's retaliation claim under the disabilities act arguing Ms. Martin did not adduce evidence of a causal connection between her request for an accommodation and SEPTA denying her request and firing her.[113] We agree with SEPTA.[114]

To establish a prima facie case of retaliation under the Americans with Disabilities Act, Ms. Martin must show: (1) she engaged in a protected activity, (2) she suffered an adverse employment action "either after or contemporaneous with the" protected activity, and (3) there is "a causal connection between" the protected activity and the adverse action.[115] An action is adverse if it "might have 'dissuaded a reasonable [person] from making or supporting a charge of discrimination.'"[116] "[P]etty slights, minor annoyances, and simple lack of good manners" cannot be retaliation.[117] Ms. Martin must first establish a prima facie case of retaliation under the *McDonnell Douglas* burden shifting analysis. [118]

SEPTA concedes Ms. Martin adduced evidence meeting the first two elements.[119] SEPTA argues Ms. Martin did not adduce evidence of a causal link between Ms. Martin's accommodation request and SEPTA terminating her months later.[120] But SEPTA misunderstands the breadth of Ms. Martin's claim regarding the nature of the adverse employment action.[121] The adverse action is SEPTA refusing to give Ms. Martin an aboveground position, asking her to return to work shortly thereafter, and then terminating her in December 2024.[122]

We look to our colleagues for guidance. Our Court of Appeals rejected a rigid three-week time frame for temporal proximity and held an adverse action occurring within three months of a protected activity is "unduly suggestive."[123] In *Ploeger v. Trs. of Univ. of Pennsylvania*, Judge Slomsky found an adverse action four weeks after an accommodation request to be unusually suggestive.[124] In *Gonzales v. Purolite Corp.*, Judge Tucker analyzed facts where an employer fired an employee two weeks after the employee reported the injury and one week after the employee requested accommodations.[125] Judge Tucker explained "[s]uch a short time frame is unusually suggestive."[126]

The timing here is similar enough to Judges Slomsky's and Tucker's analysis in *Ploeger* and *Gonzales* to be unusually suggestive. The events related to Ms. Martin's accommodation request occurred in a fifteen-day period. The independent medical examiner determined Ms. Martin could return to work without restrictions on April 15, 2024.[127] SEPTA directed Ms. Martin to return to work on May 20, 2024.[128] Ms. Martin declined to return to work and called out sick.[129] SEPTA petitioned for suspension of wages and benefits three days later.[130] Ms. Martin requested a disabilities accommodation in late May/early June.[131] But the parties do not tell us if SEPTA petitioned to suspend wages before or after Ms. Martin's request. The parties dispute when SEPTA's Disabilities Manager first engaged Ms. Martin and her doctor about an intake form and medical questionnaire.[132] SEPTA employees discussed their inability to accommodate Ms. Martin's request on June 4, 2024.[133] Ms. Martin pleads facts sufficient to satisfy the third element.[134] She adduced evidence of a material dispute regarding the causal link between her accommodation request and refusal to return to work and SEPTA's petition and accommodation denial.

We next evaluate whether SEPTA offers a non-retaliatory reason demanding Ms. Martin return to work and for denying her accommodation request.[135] We find it does.

The medical examiner's determination is a sufficient non-retaliatory reason for SEPTA's actions. The independent medical examiner determined Ms. Martin could return to work without restrictions.[136] SEPTA also reviewed Ms. Martin's accommodation request attempting to find an aboveground employment opportunity for Ms. Martin.[137] SEPTA explains the collective bargaining agreement with Local 234 prohibits SEPTA from violating employee seniority and assigning Ms. Martin a position she did not select through the picking process.[138]

The burden shifts back to Ms. Martin.[139] Ms. Martin did not try to cite facts allowing us to find a genuine issue of material fact as to whether SEPTA's articulated reason based on the collective bargaining agreement is pretextual. Ms. Martin chose not to address SEPTA's arguments to the contrary. Ms. Martin did not meet her burden. Ms. Martin's disabilities retaliation claim fails as a matter of law.

**D. Local 234 did not breach its duty of fair representation.**

Ms. Martin claims Local 234 breached its duty of fair representation under Pennsylvania state law by engaging in multiple forms of arbitrary, discriminatory, and bad-faith conduct.[140] Local 234 argues it handled Ms. Martin's claim appropriately and declined to not arbitrate her claim because her claim lacked merit.[141] Ms. Martin asks us to impose a never-ending obligation to continuing a litigation approach when the union finds no merit. Her claim is not like a situation where she won the grievance and no one answered an appeal. Local 234 never agreed to arbitrate, notwithstanding one of its agents recommending it. We agree with Local 234.

A labor organization breaches its duty of fair representation when it acts in an arbitrary manner, in a discriminatory manner, or in bad faith.[142] Arbitrary conduct is conduct falling outside a wide range of reasonableness.[143] A labor organization acts arbitrarily when it ignores a meritorious grievance or processes a grievance in a perfunctory fashion.[144] A union also acts arbitrarily when its decision is not inclusive of a fair and impartial consideration of all employees' interests.[145] Bad faith requires fraud, deceit, or dishonesty.[146]

Ms. Martin claims Local 234 failed to toll the grievance timeline, missed one arbitration deadline, and failed to meaningfully engage her during the process.[147] But Local 234 provided Ms. Martin sufficient opportunity to litigate her claim on the merits.

We are guided by Judge Kenney's review of a similar breach of fair representation claim by a union member against Local 234 approximately six years ago in *Swinton v. Southeastern*

*Pennsylvania Transportation Authority*.[148] Judge Kenney found Local 234 declined to take a member's claim to arbitration against SEPTA because Local 234 determined the claim lacked merit.[149] SEPTA denied the member's grievance at the Labor Relations Step hearing, Local 234 staff met to discuss the grievance at a follow up meeting, and Local 234 staff voted not to arbitrate the grievance.[150] Local 234 informed its member of its decision, provided the member a chance to appeal, and the member did appeal.[151] Judge Kenney found a union does not act in bad faith when it affords its member every opportunity to present their grievance and the union does not act outside the wide range of reasonableness.[152]

Ms. Martin adduced no evidence of Local 234 acting arbitrarily or in bad faith when handling her claim. Local 234 filed a grievance on behalf of Ms. Martin in November 2023.[153] Local 234 represented Ms. Martin's interest at the SEPTA Labor Relations Step Hearing on April 10, 2025.[154] The hearing officer denied the grievance and Ms. Martin's Local 234 representative raised her grievance with the larger union leadership team.[155] Local 234 recommended not arbitrating the claim.[156] Local 234 informed Ms. Martin, on May 14, 2025, it declined to demand arbitration because it did not believe Ms. Martin would win at arbitration.[157] Local 234 never told Ms. Martin the union would bring her claim to arbitration. This is not a bait and switch. Local 234 never agreed to demand arbitration.

Local 234 gave Ms. Martin the opportunity to appeal.[158] Local 234's appeal committee met with Ms. Martin on June 9, 2025.[159] The President of Local 234's arbitration review committee sent Ms. Martin a letter on June 17, 2025 informing her Local 234 decided not to arbitrate her grievance because it believed the case could not be won in arbitration.[160] Ms. Martin's disagreement with Local 234's decision does not create a genuine dispute of material fact.

**E. Ms. Martin cannot proceed on a breach of collective bargaining claim against SEPTA given she cannot proceed against Local 234 on her related claim.**

We likewise find Ms. Martin's failed to adduce sufficient facts to support her claim against SEPTA for breach of the collective bargaining agreement. A public employee can only sue her employer for breach of a collective bargaining agreement when the employer conspired with the union to deny the employee her benefits.[161] An employee's sole remedy, absent collusion, is arbitration.[162] We find Ms. Martin did not adduce sufficient facts to support her underlying claim against Local 234. We must enter judgment as a matter of law on this claim.

**F. Ms. Martin did not adduce evidence allowing her to proceed on her disabilities discrimination claim against Local 234.[163]**

Ms. Martin claims Local 234's refusal to arbitrate her grievance during her pending workers' compensation dispute is discriminatory.[164] Local 234 argues it declined to arbitrate because of the collective bargaining agreement and its view as to the lack of merits of Ms. Martin's claim.[165] We find Ms. Martin meets her prima facie case. We also find Local 234 asserts a reasonable non-discriminatory reason for the adverse action. But we find Ms. Martin again did not adduce evidence allowing a fact finder to examine whether Local 234's reasonable non-discrimination reason is a pretext for discrimination. She may not proceed to the fact finder on the claim.

To establish a prima facie case of discrimination under the Americans with Disabilities Act, Ms. Martin must adduce evidence showing she: (1) is disabled; (2) is qualified to perform the essential functions of the job, with or without reasonable accommodations; and (3) has suffered an otherwise adverse employment decision as a result of discrimination.[166] Discrimination claims are analyzed under the *McDonnell Douglas* burden shifting analysis.[167]

Ms. Martin's satisfies the first two elements of her prima facie case.[168] Ms. Martin must also show Local 234 discriminated against her because of her disability when it refused to arbitrate

her claim. Ms. Martin argues Local 234 questioned the legitimacy of her disability and expressed hostility towards her due to her mental health issues.[169] But there is no evidence discrimination motivated Local 234's decision not to arbitrate her claim. Local 234 filed a grievance in December 2023 for Ms. Martin.[170] Local 234 represented Ms. Martin at SEPTA's subsequent hearing in 2024.[171] Local 234 reviewed Ms. Martin's claim on the merits and declined to proceed with arbitration.[172]

Claims for race, age, disability, and medical leave discrimination are evaluated using the same standard and analysis structure.[173] Ms. Martin's subjective belief her disability played a role is not sufficient to raise a material dispute of fact.[174] Our colleagues have found an employee's subjective beliefs insufficient to defeat summary judgment in similar contexts. Our Court of Appeals explained an employee's allegations of discrimination need to be predicated on more than his or her own beliefs.[175] Judge Padova relied on Our Court of Appeals's reasoning to dismiss an employee's discrimination claims against the City of Philadelphia in *Magerr v. City of Philadelphia*.[176] Judge Padova explained, even at the motion to dismiss stage, an employee's subjective belief a protected characteristic played a role in an employer's employment decision is not sufficient to establish a causal connection.[177]

Local 234 also asserts a non-discriminatory reason it declined to arbitrate her claim: Local 234 did not agree Ms. Martin's claim had merit.[178] Local 234's board reviewed the merits after SEPTA denied Ms. Martin's claim and told Ms. Martin her claim lacked merit.[179] Local 234 establishes a non-discriminatory reason for declining to proceed to arbitration.

The burden shifts back to Ms. Martin to adduce facts allowing us to find a genuine issue of material fact concerning whether Local 234's reason is pretext. Ms. Martin argues, albeit not precisely, Local 234 refused to arbitrate due to an incorrect read of the collective bargaining

agreement.[180] But theories without facts are rank conjecture and cannot proceed to the jury. Ms. Martin did not adduce facts allowing us to find a genuine issue of material fact regarding the relationship between Local 234's handling of her claim and the collective bargaining negotiations. Ms. Martin's disagreement with Local 234's decision does not create a dispute regarding a genuine issue of material fact.

## III. Conclusion

Ms. Martin adduced evidence in discovery allowing us to find a genuine issue of material fact as to her claim against SEPTA for not providing her with a reasonable accommodation to her known disability following the second medical evaluation clearing her to return to work. But she did not adduce evidence allowing her to proceed on her claims against Local 234 or on her remaining claims against SEPTA.

---

[1] The former employer and union moved for summary judgment last month. ECFs 63, 66. Our Policies require parties moving for relief under Fed. R. Civ. P. 56 include a Statement of Undisputed Material Facts by both defendants and an appendix to support summary judgment. SEPTA filed its Motion (ECF 63), Statement of Undisputed Material Facts ("SEPTA SUMF"), Memorandum in support of summary judgment (ECF 68), and Joint Appendix ("a1–a3056"). Defendant Local 234 ("Local 234") filed its Motion (ECF 66), Statement of Undisputed Material Facts ("Local SUMF") and Memorandum in support of summary judgment (ECF 66). Ms. Martin opposed both motions (ECF 74 and ECF 75), responded to SEPTA's SUMF and Local 234's SUMF, included Additional Statements of Undisputed Material Facts in response to both motions, and a Supplemental Appendix ("a3057–a3210"). ECFs 74, 75. SEPTA filed a Reply. ECF 82. Local 234 filed a Reply. ECF 83.

[2] SEPTA SUMF ¶¶ 1–2.

[3] *Id.* ¶ 3.

[4] *Id.* ¶ 7.

[5] *Id.* ¶ 12.

[6] *Id.* ¶¶ 13–16.

[7] *Id.* ¶ 26.

---

[8] *Id.*

[9] *Id.* ¶¶ 30–32.

[10] *Id.* ¶ 27.

[11] *Id.* ¶ 28.

[12] *Id.*

[13] *Id.* ¶¶ 34–35

[14] *Id.* ¶ 34.

[15] *Id.* ¶ 34.

[16] *Id.* ¶ 40.

[17] *Id.* ¶ 35.

[18] *Id.* ¶¶ 36–37.

[19] *Id.* ¶¶ 37–38.

[20] *Id.* ¶ 43.

[21] *Id.* ¶ 44.

[22] *Id.* ¶¶ 45–46.

[23] *Id.* ¶ 47.

[24] *Id.* ¶ 48.

[25] *Id.* ¶ 50.

[26] *Id.* ¶ 53.

[27] *Id.* ¶ 57.

[28] *Id.* ¶ 59.

[29] *Id.* ¶¶ 62–64.

[30] *Id.* ¶¶ 61, 65, 66.

---

[31] *Id.* ¶ 66.

[32] *Id.* ¶ 70.

[33] *Id.* ¶ 67.

[34] *Id.* ¶ 71.

[35] *Id.* ¶ 72.

[36] *Id.* ¶ 74.

[37] *Id.*

[38] ECF 74 ¶ 142; ECF 82 ¶¶ 1, 42.

[39] SEPTA SUMF ¶ 76.

[40] *Id.* ¶ 77.

[41] *Id.*

[42] *Id.* ¶ 57.

[43] *Id.* ¶ 58.

[44] Local SUMF ¶ 145.

[45] *Id.* ¶¶ 143–44.

[46] *Id.* ¶ 144.

[47] ECF 74 ¶ 148.

[48] Local SUMF ¶ 148.

[49] *Id.* ¶ 145.

[50] *Id.*

[51] Local SUMF ¶ 148.

[52] SEPTA SUMF ¶ 79.

[53] *Id.*

[54] ECF 1.

[55] ECF 37.

[56] ECF 49. Local 234 moved to dismiss Ms. Martin's second amended Complaint. ECF 35. We dismissed Ms. Martin's race discrimination claim against Local 234 and allowed her remaining claims to proceed to discovery on June 23, 2026. ECF 49.

[57] ECF 63, 64, 66, and 68. Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those 'that could affect the outcome' of the proceeding, and 'a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party.'" *Pearson v. Prison Health Serv*., 850 F.3d 526, 534 (3d Cir. 2017) (citation omitted). The "mere existence of a scintilla of evidence" favoring the nonmoving party does not prevent summary judgment. *SodexoMAGIC, LLC v. Drexel Univ*., 24 F.4th 183, 204 (3d Cir. 2022) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). When determining whether a disputed fact is genuine, we draw all inferences in favor of the non-moving party. *Id*. We do not weigh evidence or make credibility determinations. *Spivack v. City of Phila.*, 109 F.4th 158, 165-66 (3d Cir. 2024) (citing *Peroza-Benitez v. Smith*, 994 F.3d 157, 164 (3d Cir. 2021)).The Supreme Court "outlined two closely related methods for a movant to succeed at summary judgment": (1) under the "standard approach," the moving party may produce material facts, genuinely undisputed, entitling it to judgment as a matter of law; and (2) under the "*Celotex* approach," the moving party "may instead demonstrate that the nonmoving party has not made 'a showing sufficient to establish the existence of an element essential to that party's case … *on which that party will bear the burden of proof at trial*." *Mall Chevrolet, Inc. v. General Motors LLC*, 99 F.4th 622, 630 (3d Cir. 2024) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Summary judgment is appropriate where the nonmoving party does not make a showing sufficient to establish the existence of an element essential to its case and on which it bears the burden of proof at trial. *SodexoMAGIC*, 24 F.4th at 204 (citing *Celotex Corp*., 477 U.S. at 322).

We "view the facts and draw reasonable inferences 'in the light most favorable to'" Ms. Martin as the party opposing SEPTA and Local 234's motions. *See Scott v. Harris*, 550 U.S. 372, 378 (2007) (quotation omitted).

[58] ECFs 74, 75.

[59] Ms. Martin adduced sufficient evidence creating a genuine issue of material fact as to whether SEPTA provided a reasonable accommodation by allowing Ms. Martin to participate in the Summer 2024 picking process which would have provided her the opportunity to select an above-ground job placement.

[60] 42 U.S.C. § 2000e-2(a)(1).

[61] *McDonnell Douglas Corp.*, 411 U.S. at 792.

[62] *Qin v. Vertex, Inc.*, 100 F. 4th 458, 473 (3d Cir. 2024) (citing *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008)).

[63] *Id.* at 474 (citing *Makky*, 541 F.3d at 214).

[64] *Id.*

[65] *Id.* at 474–75 (quoting *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994)).

[66] *Fuentes*, 32 F.3d at 763 (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

[67] ECF 35.

[68] ECF 68 at 7.

[69] SEPTA also argues Ms. Martin did not exhaust her administrative remedies by failing to plead race discrimination in her EEOC complaint. We disagree. Ms. Martin adduced facts sufficient to show she alleged race discrimination in her Amended EECO charge signed November 14, 2025. ECF 74 ¶ 161.

[70] *Gelpi v. City of Philadelphia*, 183 F. Supp. 3d 684, 690 (E.D. Pa. 2016) (quoting *Lande v. City of Bethlehem*, 457 F. App'x 188, 193 (3d Cir. 2012)).

[71] *McGovern v. City of Philadelphia*, 554 F.3d 114, 121 (3d Cir. 2009) (quoting *Jett v. Dallas Independent School District*, 491 U.S. 701, 733 (1989)).

[72] We evaluate the merits of Ms. Martin's Tile VII claim, despite finding Ms. Martin failed to plead a claim under section 1983, to explain allowing Ms. Martin to amend is futile.

[73] ECF 68 at 10.

[74] *Id.*

[75] *Sarullo v. U.S. Postal Serv*., 352 F.3d 789, 798 (3d Cir. 2003) (per curiam) (internal quotation marks removed).

[76] *Qin*, 100 F.4th at 474 (quoting *In re Tribune Media Co.*, 902 F.3d 384, 403 (3d Cir. 2018)).

[77] *Id.*; *In re Tribune Media Co.*, 902 F.3d at 403 (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)).

[78] *Qin*, 100 F.4th at 474 (citing *Mandel v. M&Q Packaging Corp.*, 706 F.3d 157, 170 (3d Cir. 2013)).

[79] *Id.*

[80] Ms. Martin asserts more evidence of comparators might exist. But she has not produced such evidence nor moved to compel such discovery from SEPTA. We cannot infer the existence of such evidence when it is absent from the record.

[81] We find Ms. Martin fails to meet her burden on her prima facie case. We therefore do not evaluate SEPTA's burden under *McDonnell Douglas*.

[82] ECF 35 at 15–17.

[83] ECF 74 at 16.

[84] *Id*. at 16–19.

[85] ECF 63 at 15–16.

[86] *Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 256 (3d Cir. 2014).

[87] *See id.*

[88] *Id.*

[89] *Id.*

[90] *Capps v. Mondelez Glob. LLC*, 147 F. Supp. 3d 327, 337 (E.D. Pa. 2015), *aff'd*, 847 F.3d 144 (3d Cir. 2017) (citing *Abdul-Latif v. Cnty. of Lancaster*, 990 F. Supp. 2d 517, 531 (E.D. Pa. 2014)).

[91] *Capps*, 147 F. Supp. 3d at 337 (citing *Blakney v. City of Philadelphia*, 559 F. App'x 183, 186 (3d Cir. 2014)).

[92] ECF 68 at 13 n.5.

[93] *Id*. at 13–15.

[94] ECF 74 at 16–18.

[95] *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 307 (3d Cir. 2012).

[96] ECF at 17.

[97] SEPTA SUMF ¶¶ 15, 29, 74.

[98] *Id.* ¶¶ 27, 38.

[99] ECF 74 at 16.

[100] *Id.*

---

[101] SEPTA SUMF ¶ 15.

[102] *Id.*

[103] *Id.* ¶ 74.

[104] *Id.*

[105] ECF 74 at 19.

[106] *Id.* at 18.

[107] *Id.*

[108] SEPTA SUMF ¶¶ 15, 26, 38.

[109] *Williams v. Pinnacle Health Fam. Care Middletown*, 852 F. App'x 678, 679 (3d Cir. 2021) (The same legal standard applies to disability discrimination claims under both the ADA and PHRA).

[110] ECF 35 ¶¶ 133–135.

[111] ECF 74 at 15.

[112] *Id.*

[113] ECF 68 at 20.

[114] We deny SEPTA's motion for summary judgment on Ms. Martin's ADA discrimination claim because Ms. Martin raises a genuine dispute of material fact as to whether SEPTA failed to provide reasonable accommodation.

[115] *See Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997).

[116] *See Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)).

[117] *See id.*

[118] *Larochelle v. Wilmac Corp.*, 210 F. Supp. 3d 658, 703 (E.D. Pa. 2016), *clarified on denial of reconsideration*, No. 12- 5567, 2016 WL 6135577 (E.D. Pa. Oct. 21, 2016), *aff'd*, 769 F. App'x 57 (3d Cir. 2019), *and aff'd*, 769 F. App'x 57 (3d Cir. 2019).

[119] ECF 68 at 20.

[120] *Id.*

---

[121] *Id.*

[122] ECF 35 ¶ 129.

[123] *Qin*, 100 F.4th at 477.

[124] *Ploeger v. Trs. of Univ. of Pennsylvania*, No. 22-2389, 2025 WL 4072634, at *1 (E.D. Pa. Oct. 10, 2025).

[125] *Gonzales v. Purolite Corp.*, No. 17-2983, 2019 WL 4277456, at *7 (E.D. Pa. Sept. 10, 2019).

[126] *Id.*

[127] SEPTA SUMF ¶ 46

[128] *Id.* ¶ 47.

[129] *Id.* ¶¶ 48, 49.

[130] *Id.* ¶ 57.

[131] *Id.* ¶ 59.

[132] ECF 74 ¶ 62.

[133] SEPTA SUMF ¶ 66.

[134] Ms. Martin only needs to raise one genuine issue of material fact regarding one retaliatory action to shift the burden to SEPTA. We do not find an usually suggestive retaliatory motive or causal connection between Ms. Martin's accommodation request in May 2024 and SEPTA's decision to terminate her in December 2024.

[135] *McDonnell Douglas*, 411 U.S. at 792.

[136] SEPTA SUMF ¶ 46.

[137] *Id.* ¶¶ 59–66.

[138] *Id.* ¶ 66.

[139] *McDonnell Douglas*, 411 U.S. at 792.

[140] ECF 16 ¶¶ 65–75.

[141] ECF 66 at 9–16.

---

142 *Lopez v. Transp. Workers Union, Loc. 234*, No. 16-5515, 2018 WL 1757726, at *4 (E.D. Pa. Apr. 12, 2018) ("*Lopez II*") (quoting *Air Line Pilots Ass'n, Intl. v. O'Neill*, 499 U.S. 65, 67 (1991)) ("[A] union breaches the duty of fair representation 'if its actions towards its members are due to arbitrariness, discrimination or bad faith.'" (quoting *Connelly v. Steel Valley Educ. Ass'n,* 119 A.3d 1127 (Pa. Commw. Ct. 2015) (internal quotation omitted))).

143 *Lopez II*, 2018 WL 1757726, at *4 (quoting *Air Line Pilots Ass'n, Intl.*, 499 U.S. at 67).

144 *Lopez v. Transp. Workers Union Local 234*, No. 16-5515, 2017 WL 2633468, at *5 (E.D. Pa. June 19, 2017) ("*Lopez I*") (quoting *Lopresti v. Cnty. of Lehigh*, No. 12-2832, 2013 WL 2449190, at *4 (E.D. Pa. June 6, 2013) (quoting *Riley v. Letter Carriers Loc. No. 380*, 668 F.2d 224, 228 (3d Cir. 1981))).

145 *Taylor v. Brennan*, No. 18-2118, 2025 WL 1255235, at *4 (E.D. Pa. Mar. 19, 2019) (citing *Vaca v. Sipes*, 386 U.S. 171, 191 (1967)) (a union may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion).

146 *Robinson v. Nat'l R.R. Passenger Corp.*, No. 18-341, 2019 WL 3310333, at *20 (E.D. Pa. July 22, 2019).

147 ECF 35 ¶¶ 85, 86. We earlier held Ms. Martin's other allegations related to strategy rather than arbitrary conduct. ECF 23 at 10–11.

148 *Swinton v. Se. Pennsylvania Transportation Auth.*, No. 18-5067, 2020 WL 3574465, at *15 (E.D. Pa. July 1, 2020).

149 *Id.* at *12–13.

150 *Id.*

151 *Id.* at *13.

152 *Id.* at *15.

153 SEPTA SUMF ¶ 40.

154 *Id.* ¶ 77.

155 *Id.* ¶¶ 77, 143–44.

156 ECF 74 ¶ 148.

157 Local SUMF ¶ 148.

158 *Id.* ¶ 145.

[159] *Id.*

[160] *Id.* ¶ 148.

[161] *Runski v. Am. Fed'n of State, Cnty. & Mun. Emps., Loc. 2500*, 598 A.2d 347, 350 (1991), *aff'd sub nom. Runski v. AFSCME, Loc. 2500*, 642 A.2d 466 (1994).

[162] *Harkins v. U.S. Steel Corp.*, 354 F. App'x 698, 703 (3d Cir. 2009) (citations omitted).

[163] Ms. Martin voluntarily withdrew her disabilities retaliation claim. ECF 75 at 27.

[164] ECF 35 at 20–22.

[165] ECF 66 at 13; Local SUMF ¶ 148.

[166] *Williams v. Philadelphia Hous. Auth. Police Dep't*, 380 F.3d 751, 761 (3d Cir. 2004) (citing *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999)).

[167] *McDonnell Douglas*, 411 U.S. at 792.

[168] SEPTA SUMF ¶¶ 1–2, 12.

[169] ECF 35 ¶ 142.

[170] SEPTA SUMF ¶ 40.

[171] *Id.* ¶ 77.

[172] Local SUMF ¶ 148.

[173] *McDonnell Douglas*, 411 U.S. at 792.

[174] *Magerr v. City of Philadelphia*, No. 15-4264, 2016 WL 1404156, at *9 (E.D. Pa. Apr. 11, 2016).

[175] *Ekhato v. Rite Aid*, 529 F. App'x 152, 156 (3d Cir. 2013); *Jones v. Sch. Dist. of Philadelphia*, 198 F.3d 403, 414 (3d Cir. 1999).

[176] *Magerr*, 2016 WL 1404156, at *9.

[177] *Id.*

[178] Local SUMF ¶ 148.

[179] *Id.*

[180] ECF 35 ¶¶ 139–144.